VEDDER v. FELLOWS.

The reasonableness of a regulation requiring way passengers on a railroad to surrender their tickets before reaching the station nearest to that of their destination, without receiving any check or other evidence of the payment of fare, is a question of law, and should not be submitted to the jury as one of fact.

*It seems* that such a regulation is reasonable and valid. *Per* G. B. STRONG, J*

*It seems* that a conductor sued for ejecting a passenger for non-compliance

Vedder *v.* Fellows.

with such a regulation, may give evidence of previous threats by the passenger tending to prove his disposition to pick a quarrel, although the threats did not come to his knowledge. The evidence appears to be proper to reduce the vindictive damages to which the conductor is exposed.

APPEAL from the Supreme Court. Action brought by the plaintiff for being forcibly ejected by the defendant from a passenger car of the New York Central Railroad Company, on the 27th of November, 1854, at the town of Schuyler, in the county of Herkimer. On the trial before Mr. Justice JAMES, at the Montgomery Circuit, it appeared that the plaintiff purchased a passenger ticket at Canastota for St. Johnsville, and took passage in a train of which the defendant was the conductor. The plaintiff exhibited his ticket and the defendant marked it by punching a hole in it, before reaching Utica. It was the custom of the conductors on the road to inspect all the tickets, and to take up those of the passengers for all the way stations west of Schenectady, after leaving Utica, and before arriving at Frankfort, which is the next station to the eastward. There was no written resolution on the subject in the minutes of the directors of the company, but from the universality and publicity of the practice, there was reason to infer that it was adopted with their concurrence, if not by their instructions. Before reaching Utica the plaintiff complained to some of his fellow-passengers that he had previously suffered some wrong by reason of the arrangement, and said that if the defendant should demand his ticket before passing the station next west of St. Johnsville, and attempt to enforce its delivery, he would not only forcibly resist, but he would give the defendant "a licking," and asked them to assist him. The defendant demanded the plaintiff's ticket on the way from Utica to Frankfort station. The plaintiff refused to give it upon the ground that the demand was premature, as there were five stopping places before reaching St. Johnsville, and alleged that he had suffered on a former occasion from surrendering his ticket before it ought to have been required. The defendant told him that if he refused to give up his

ticket he would be ejected from the car on their arrival at the next station. The defendant then passed through the train, and on his return repeated his demand, when the plaintiff positively refused then to surrender his ticket. On arriving at the Frankfort station the defendant with three of the brakemen removed the plaintiff—who persisted in his refusal and who resisted so forcibly that he broke the back of his seat—and laid him on the ground, when the brakemen held him until the train started to the eastward. He then offered to surrender his ticket, but he was told that it was too late. However, he sprang into one of the cars, when the defendant stopped the train and required the plaintiff to leave, which he did, and the train proceeded without him. At the close of the testimony the defendant's counsel asked for a nonsuit, and requested the judge to decide, as a question of law, that the regulation was a reasonable one. The judge thereupon decided that if the question was to be disposed of by him, he should hold that the regulation requiring the delivery of the tickets without furnishing those who were going beyond the next station with a check or some other evidence of their right to a passage, was not a reasonable one, nor one which the passengers were bound to observe; but that still he deemed the question a proper one for the jury, and should submit it to them, he having passed upon it as question of law at the request of the counsel for the defendant: and he denied the motion for a nonsuit. The defendant offered evidence to show that on the occasion to which the plaintiff had alluded when complaining to his fellow-passengers, he had eventually given up his ticket and was therefore allowed to proceed to the place of his destination; but the evidence was rejected. The judge charged the jury that although, at the solicitation of the defendant's counsel, he had decided the question as to the reasonableness of the regulation as one of law, and he had given his opinion that it was an unreasonable one, yet he should leave that question to them, and that they were at liberty to differ from him if they should choose to do so. That if they should conclude that the regulation was a reasonable one, and that the defendant had

used no unnecessary violence in enforcing it, then they should find a verdict for the defendant. But if they should conclude that the regulation was unreasonable, or that unnecessary violence had been used against the plaintiff, they should render a verdict in his favor. The judge was asked by the counsel for the defendant to instruct the jury that if they believed from the evidence that the plaintiff intended to get into a difficulty and fight with the defendant they should take that circumstance into consideration in mitigation of damages, whether the defendant had knowledge of such purpose or not—which the judge declined to do. Various other requests were made and exceptions taken by the defendant's counsel, which sufficiently raised the questions for adjudication, whether the regulation in question was a reasonable one; whether it is a question of fact or of law, and whether the plaintiff's threats as indicative of his frame of mind should be taken into consideration in mitigation of damages. The jury found a verdict for the plaintiff for $700 damages, for which, and the costs of suit, a judgment was rendered in his favor, which was affirmed at a general term in the fourth district. The defendant appealed to this court.

*John H. Reynolds*, for the appellant.

*T. B. Mitchell*, for the respondent.

S. B. STRONG, J. If the judge had so far complied with the request of the counsel for the defendant as to have made a positive decision as to the reasonableness or unreasonableness of the regulation requiring all the passengers for any station west of Schenectady, immediately after leaving Utica, to deliver up their tickets without at the same time receiving a check or some other paper evincing their right of passage to their respective places of destination, the defendant would have been precluded from contending that the judge had erroneously assumed it to be a question of law. Of course the defendant might have availed himself of the objection, if well founded.

that the question had been erroneously decided against him. But the judge was not requested to decide the question as one of law hypothetically, and then to submit it to the jury as one of fact; and in doing so it seems to me, that he erred, whether his opinion upon such question was right or wrong. He should in the first instance either have decided it positively as a question of law, or have determined to submit it as a question of fact to the jury, without himself expressing any opinion about it; agreeably to the maxim that to questions of law the court, and to questions of fact the jury, respond. The judge has undoubtedly a right to assume as established any fact which is admitted or sustained by clear, conclusive and undisputed evidence, and he may comment upon the weight due to the testimony of any of the witnesses, but he cannot rightfully state to the jury his conclusion as to any questionable fact. The difficulty is not cured by an announcement to the jury, such as was made in this case, that the question was one of fact for their determination, and that if they should not concur in his conclusion they might decide the other way. In most instances the jury would concur with the expressed opinion of the court on questions of fact; and if the practice of stating it, and especially in such a manner as to leave it doubtful whether the question was one of law or fact, should become common, and should be tolerated, parties would in effect be deprived **of** their constitutional right to have their cases decided by a jury on all questions proper for their determination.

I think that the judge erred in his eventual conclusion that the question to which I have alluded was one of fact and not of law. There was not really any disputed fact in the case. The regulation was proved. There was, it is true, no positive proof that it had been made by the directors of the company or their general superintendent, nor was it absolutely necessary that there should have been. The conductors, in the absence of any directions from their superior officers, have a right, and indeed it is obligatory upon them, to adopt some rule relative to the surrender of the tickets by the passengers. If the rule should be palpably unreasonable, they

would not be justifiable in enforcing it. I do not agree that the passengers upon our railroads deprive themselves of the right to complain of an unreasonable practice by voluntarily taking seats in the cars. The railroads are public institutions, established by law for public accommodation. They have, except where they adjoin or are near navigable rivers, superseded all other extensive ways of conveyance, and have thus rendered travelers and owners of freight in a great measure dependent upon their means of locomotion. The companies have thus public duties to perform, and they ought not to, and in my opinion they cannot legally, subject either passengers or freight owners to regulations that are palpably unreasonable. In this case, however, there was no positive evidence that any passenger had ever suffered any inconvenience or loss from submission to the regulation in question. The plaintiff indeed alleged in his conversations with his fellow-passengers, and at one time in the hearing of the defendant, that he had once been subjected to some injury from its enforcement; but that was not evidence except from the implied admission of the defendant, and was rebutted by the offer on the part of the defendant to prove that on the occasion alluded to by the plaintiff he had eventually given up his ticket and been allowed to proceed without any further exaction in the same train. If the assertion of wrong made by the plaintiff was, under the circumstances, entitled to any consideration, the defendant should have been permitted to rebut it; and as he was not, such assertion cannot be received as proof of any fact. There being then no proof of any actual inconvenience to passengers from compliance with the regulation, the question as to its reasonableness and consequent validity must depend upon its intrinsic character. That is generally a question of law. Thus, in an action for a malicious prosecution, where the facts are sufficiently established, the question whether they are of a character to constitute a probable cause for the institution of the prosecution is one of law for the determination of the court. There are strong reasons why the reasonableness of railroad regulations should, in the absence of any positive proof as to their effect,

be submitted to the court as a question of law, rather than to the jury as one of fact. Ordinarily jurors are not aware, nor can they readily be made aware, of all the reasons calling for the rule. They are apt to listen readily to any allegations of injuries on railways. What one jury might deem an inconvenient rule, another might approve as judicious and proper. There would be no uniformity. Ordinarily the managers of railways are much better qualified than jurors to ascertain and weigh the exigencies which call for any rule, and, if it should be productive of some inconvenience, to compare that with the evil to be prevented or the good to be produced by its adoption. If the question should be deemed one of law there would be eventual uniformity, as any diversity of sentiment in the courts below would be finally harmonized in the court of dernier resort.

If the question as to the reasonableness of the regulation in question is, under the circumstances, to be decided as a matter of law, it cannot be condemned unless it is of a character to subject the passengers to unnecessary inconvenience or danger of loss. The simple fact of delivering up a ticket when called for at any time cannot be productive of any inconvenience nor subject the passenger to any serious danger of loss. There is a mere possibility, when he has subsequently to pass several stations. that the conductor may suppose that he is a new comer and demand a second payment of passage money. But considering the great sagacity in identifying persons, and the retentive memory usually exhibited by conductors, and the danger to them of being seriously mulcted should they demand such double payment of fare, and resort to forcible measures to enforce it, the danger is too inconsiderable to call for the condemnation of the rule. The danger would undoubtedly be avoided by giving to each passenger a check or other writing indicative of his right to pass to his place of destination, but that would call for an examination of the tickets or checks of all the passengers between each last and the next succeeding station; and that, when the passengers are very numerous, would occupy the entire time and attention of the conductors. It is

much more for the advantage of the passengers that the con-ductors should be enabled to devote a considerable portion of their time to the general management of the trains, and to the security, good order and comfort of those committed 'to their charge, than it would be prejudicial to them to subject them to the remote possibility of being called upon for a double pay-ment of passage money. Besides, should a conductor make a mistake as to the identity of some passenger, it could ordinarily be corrected by some one of his fellow-passengers sitting near him. It cannot, I think, be reasonably urged that some one other than the conductor should be specially employed for the purpose of inspecting and collecting the tickets, and receiving pay from those who have none. To employ in so confiden-tial a relation, as many pesrons as there are trains passing daily both ways, would devolve a heavy expense upon railway companies, which in their present financial condition but few of them are able to bear. In the arrangements made by insti-tutions having such extensive operations, some allowance should be made for differences of opinion. The directors themselves often differ as to the expediency, safety or propriety of measures proposed for their adoption; others who are not personally interested in the affairs of the companies nor intimately ac-quainted with their operations, are more liable to diversities of opinion. In such cases regulations adopted by those com-panies ought not to be condemned unless they are palpably inconvenient or unjust. That which I have been considering is neither, and should therefore have been adjudged to have been a protection to the conductor so far as he pursued the requisite measures to enforce it.

The question whether any unnecessary violence was used, was a proper one for the consideration and determination of the jury, and had their verdict proceeded simply on the ground that there had been, and had it not been at all influenced by the impression that the regulation was an improper one which could not be legally enforced, we could not have interfered with the judgment.

Then as to the decision of the judge that the jury, if they thought proper to award any damages to the plaintiff, should not take into consideration his improper and intemperate language in the car shortly before his ejection, and which was unknown to the defendant at the time, by way of mitigation, that would have been right if the plaintiff had confined his claim to compensation for bodily suffering and loss of time and money; but in actions of assault and battery damages are usually awarded for the wounded feelings of the plaintiff by reason of the insult, and in aggravated cases exemplary and sometimes punitory damages are awarded, and such were undoubtedly given in this instance. It seems to me that when such damages may be awarded the amount should depend in some degree upon the ill or good conduct and disposition of the plaintiff at the time, although it might not be known to the defendant. However, it is unnecessary to decide this point if I am right in my conclusions as to the other questions involved in this controversy.

The judgment should be reversed and there should be a new trial, the costs to abide the event of the suit.

JOHNSON, Ch. J., DENIO, GROVER and GRAY, Js., concurred in the judgment that the reasonableness of the regulation was a question of law; some of them agreed that the regulation in question was reasonable; but the court did not pass upon that point. SELDEN, J., was absent; COMSTOCK, J., did not sit in the case, and ALLEN, J., expressed no opinion.

Judgment reversed, and new trial ordered.