ILLINOIS CENTRAL RAILROAD COMPANY
v.
SALLY NEER.

*Railroads—Collision with Preceding Train—Rule—Death of Engineer —Risk of Employment—Liability of Master—Instruction—Comparative Negligence.*

1. Where, by the rules of a railroad company, an engineer is required to approach stations with great care, and is not entitled to notice that a preceding train is late, he must be presumed to have incurred the hazard and risk involved as an incident of the employment.

2. Where a person knowing the hazards of his employment as the business is conducted, voluntarily continues therein without any promise of the master to do any act to render the same less hazardous, the master will not be liable for any injury he may sustain therein, unless it is caused by the wilful act of the master.

3. The doctrine of comparative negligence has no application where an unwise or injudicious rule of the master, well known and understood by the servant, produces a hazard which he is presumed to incur voluntarily as an incident of his employment.

4. The fact that an engineer is under instructions to make certain time, does not modify or dispense with a standing rule as to the care to be observed in approaching stations.

5. It *seems* that the rule in question is wise and proper.

[Opinion filed November 18, 1887.]

APPEAL from the Circuit Court of Champaign County; the Hon. C. B. SMITH, Judge, presiding.

Messrs. J. S. WOLFE and B. F. AYER, for appellant.

Messrs. GEORGE W. GERE and J. W. LANGLEY, for appellee.

" It is the duty of a railroad company to adopt such rules and regulations for the running of its trains as would be reasonably safe, and if it has adopted such rules, then it *must* conform to them, or be responsible for the consequences resulting from a departure from them, unless it used reasonable care to avoid accidents which might occur from such departure." C., B. & Q. R. R. Co. v. George, 19 Ill. 517.

"When the movement of trains by telegraph is left to the discretion of a division superintendent or train master it is his duty to so regulate their running time as to insure safety against collision." C., B. & Q. R. R. Co. v. McLallen, 84 Ill. 144.

" The peremptory order of the train master that the train must be brought through within a specified time, was an assurance that the track would be safe for the journey, and required the train master to take reasonable precaution to make it so." Sheehan v. N. Y. C. & H. R. R. Co., 91 N. Y. 340.

"As between servant and employer the latter is bound to use reasonable care in the prosecution of the business in which he engages the former, and it can not be made out upon principle, or from any cases of authority, that he shall not be liable for damages arising from a failure to do so." Sheehan v. N. Y. C. & H. R. R. Co., 91 N. Y. 334; Flike v. The B.

& A. R. R. Co., 53 N. Y. 554; Cone v. Delaware, etc., R. R. Co., 81 N. Y. 206.

"Where the negligence of the company is the proximate cause of the injury, contributory negligence of a fellow-servant is no defense." Grand Trunk Ry. v. Cummings, 106 U. S. 700; Stringham v. Stewart, 100 N. Y. 526; Cone v. D., L. & W. Ry., 81 N. Y. 208.

"The train master and his assistants, in relation to train men, are vice principals. They stand in place of and act for the master. Their negligence is the master's negligence." C. B. & Q. R. R. Co. v. McLallen, 84 Ill. 109; Sheehan v. N. Y. C. & H. R. R. Co., 91 N. Y. 332; Darrigan v. N. Y. & N. E. Ry., 52 Conn. 285.

"A master is always liable for negligence in respect to such acts and duties as he is required to perform and discharge as master." Flike v. Boston R. R. Co., 53 N.Y. 553.

"A master can not relieve himself from damages occasioned by his own negligence by contract, either expressed or implied." Lake Shore & M. S. R. R. Co. v. Sprangler, (Ohio) 8 N. E. Rep. 467; Kansas Pacific Ry. Co. v. Peavy, 29 Kas. 169; Railroad Co. v. Lockwood, 17 Wall. 357.

WALL, J. This action was brought by the administratrix of James A. Neer, deceased, to recover damages by reason of the death of said Neer. There was judgment for the plaintiff below for $5,000, from which an appeal is prosecuted by the railroad company. The deceased was a locomotive engineer, and came to his death by running into a train that was standing on the track at Savoy station. The two trains were going in the same direction but the forward train was some four hours behind time. The right to recover is predicated upon the fact that the deceased did not know this train was late; that he was using due and ordinary care, but did not discover the train in front of him until too late to prevent the collision and that it was the duty of the defendant to have notified him of the danger. The defendant insists, on the contrary, that according to its rules it was under no obligation to notify him of the lateness of the preceding train; that its rules in this

respect are sound and justified by experience; that he was familiar with these rules and took the hazard of whatever risk or danger was involved in their application, and that the accident was primarily due to his negligence in not approaching the station with proper care as required by a very important rule which he well understood. That rule reads as follows: "All trains when approaching stations, must do so with great care, expecting to find some other train occupying the main track." Had this rule been observed it is not probable the collision would have occurred.

There can be no reasonable doubt, from reading the evidence, that the deceased, from some cause not apparent, was unaware of his proximity to the station until he saw the red light of the preceding train, or, perhaps, the signal of a brakeman who started down the track with a lantern to stop him if possible. The only excuse for this failure of the deceased to know where he was, must be found in the condition of the atmosphere. It was a rainy and somewhat foggy day late in November, and there was probably some difficulty in keeping the glass of the cab clear and transparent. But, giving deceased the benefit of the most favorable view to be taken of the matter, we are unable to find any justification for him on this branch of the case. If there was difficulty in keeping a good lookout so as to know whether there was a train standing on the main track, which he was bound to expect according to the rule just quoted, it was all the more important that he should know where he was, and have his train under such control that he might stop if necessary. He was familiar with the rules and with the road. He had often pulled the preceding train and he knew it was liable to be late. He had been late with it himself nearly as much as it was on this occasion, but a few weeks before, and he knew that he had no right to expect notice, and that he must depend on his own vigilance to avoid running into it if it was late.

It is said he was under instruction to make the run within a certain time, and that he was attempting to comply with this order. All trains are under instructions to make certain time, but that does not modify or dispense with the standing rule

as to the care to be observed in approaching a station. There was, then, no fault on the part of the company in not giving him notice that the preceding train was late, and that he might expect to find it in his way standing on the main track at some station.

There is in the record a considerable amount of proof to the point that, according to the experience and judgment of men whose experience and judgment should give their opinions great weight, the rule in force on this road is a sound one and is generally adopted by leading roads in this part of the country. In the judgment of these witnesses it is safer to require the men in charge of a train to look for and protect themselves against a preceding train, than to attempt to advise them from the office of the train master, because it is not possible to give the information on all occasions, owing to the various interruptions incident to the telegraph service, and the men, if relying upon getting it, might and would frequently be caught where information is impossible; that men will thus relax their vigilance, and that the result will be more danger and more accident than under the system now in force. Whether this reasoning and these opinions should be adopted or not, there is, in this record, really no conflict in the evidence on the point as to the propriety of the rule, and if the practice of the appellant in this respect is to be condemned, it must be upon a conclusion reached independent of, and discarding the opinions of these expert witnesses. We think that neither the court nor jury has such knowledge of the subject-matter as to justify such a conclusion.

The operation of a railroad is by no means a simple task, and men who have adopted it as a business, and who spend their whole time in it, are better qualified to express an opinion upon a question like this, than those who are without experience in the premises.

But whether the rule is defensible or not, it seems to be generally adopted on first class roads, and the deceased was well aware of its existence. He knew it was in constant application, and if it involved hazard and danger he must be presumed to have voluntarily incurred the risk, unless under some

recognized exception this well known principle may be ignored in cases like the present.

There appears to have been no promise by the company to change the rule, nor does it appear there was any coercion or other improper action by any of its agents or officers superior to deceased, whereby he was induced to take the risk against his own judgment or inclination, nor was there any wilful act of the master injurious to the deceased.

The record being in this condition, the court gave the following instruction, of which appellant complains:

"The law requires of all persons the duty of exercising reasonable care and prudence for their own personal safety; this rule of law applied to James A. Neer in running his train; it was his bounden duty to give reasonable exercise to all his faculties of judgment, sight and hear'ng, to protect himself from accident and danger; he was bound to use his knowledge of the mode and manner of running and operating trains on the defendant's road, and i   there was any known, regular and systematic method of operating trains on the defendant's road shown by the evidence, then Neer would be charged with knowledge of such rules and method of so operating such trains, if the proof shows he was long enough on such road to have had opportunity to learn and know its rules and methods.   And if the proof shows that the defendant's regular method of running or operating its trains was a dangerous one, and liable to result in accident or injury to the employes, and if the proof shows that Neer continued in the   employment of the defendant, knowing that its method or system of operating its trains was dangerous and hazardous and liable to involve wrecks and collisions, and if you believe from the evidence here, that the alleged collision complained of was one of the ordinary and probable hazards and results of such alleged dangerous method of running and operating defendant's trains, and if the alleged collision resulted in the death of Neer, then, in that event of the proof, the plaintiff could not recover, unless the proof should show Neer's negligence slight and that of the defendant's negligence gross or wilful when compared with each other."

In the case of Stafford v. C., B. & Q. R. R. Co., 114 Ill. 244, the Supreme Court announces it as well settled "that if a person, knowing the hazards of his employment as the business is conducted, voluntarily continues therein without any promise of the master to do any act to render the same less hazardous, the master will not be liable for any injury he may sustain therein unless, indeed, it may be caused by the wilful act of the master." The instruction was erroneous in that it left the jury to qualify the non-liability of the master in the case supposed by the doctrine of comparative negligence. That doctrine has no application where an unwise or injudicious rule of the master, well known and understood by the servant, produces a hazard which the servant is presumed to incur voluntarily as an incident of the employment.

It appears from the record that the collision caused the death of Neer not only, but of three others who were in the caboose of the forward train and were probably passengers. Notwithstanding the natural sympathy for those who have sustained loss by the death of the engineer, public policy demands that the lives of those who travel upon railroads be not imperiled by the negligence of men in charge of trains. To support this judgment is, in our view of the case, to put a premium upon the negligence of one who should have been careful and vigilant, not only for the protection of property in his care, but for the safety of human life, his own included.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*