## RAILWAY v. ADCOCK.

1. RAILROADS: *Regulation as to flag stations.*
   The refusal of a railway company to designate as a flag station for its through trains, an unincorporated town, containing only a few houses, and situated within three miles of a regular station, is not an unreasonable regulation.

2. SAME: *Same.*
   The facts as to such regulation not being controverted, it is the province of the court to declare it reasonable, and it is error, under such circumstances, to submit the question of its reasonableness to a jury.

3. SAME: *Failure to stop for passenger.*
   Where the custom of trains to stop at a place misleads a person, without fault on his part, into the belief that it is a flag station, and relying upon that custom, he buys a ticket to and from such place from an agent of the railway company, who knows that it is his intention to use it in returning on a train which does not stop at the point of his destination, and yet fails to inform him of that fact, the company will be liable for the failure of the train to stop when properly flagged.

APPEAL from *White* Circuit Court.

M. T. SANDERS, Judge.

Adcox brought this action against the St. Louis, Iron Mountain and Southern Railway Company, to recover damages sustained by reason of the defendant's passenger train No. 1 refusing to stop at Higginson Station in the night time, for the purpose of taking the plaintiff on after it had been properly flagged. The evidence shows that Higginson was a small

way station, comprising three or four houses, and that day passenger trains stopped there only when flagged. It was without telegraphic communication, and situated only three miles south of Kensett, and six miles north of Garner, both of which were telegraphic stations and regular stopping points for all trains. Higginson was a flag station for one regular passenger train and one local freight, which carried passengers daily each way. But by the rules of the company, duly promulgated, passenger trains Nos. 1 and 4, which were night trains, were forbidden to stop there at all. It was, however, shown by the testimony of the plaintiff's witnesses, that on a number of occasions said train No. 1 had stopped for passengers at Higginson on being flagged. On the part of the defendant, the station agent and several engineers testified that on other occasions the company's employes had refused to stop said trains at Higginson, even when flagged, because of the rule forbidding it. In the afternoon of December 30, 1886, the plaintiff purchased at Beebe, a station on the defendant's road, a round-trip ticket to Higginson. He testifies that he went to the depot and asked the telegraph operator whether train No. 1 was on time? On being informed that it was, he stated if that was the case he would get a round-trip ticket to Higginson, and return on that train, and that he then asked the station agent, Welty, for such ticket, telling him that he wished to return on train No. 1. He also testified that the agent did not inform him that that train was forbidden to stop at Higginson, and that he had no knowledge of that fact. He also stated that in September, 1886, he was a passenger on train No. 1, and that on that occasion it stopped at Higginson, but he did not know whether it was flagged. Welty, the station agent, testified that he was busy, and paid no attention to the plaintiff's conversation with the operator, but remembered hearing him ask whether No. 1 was on time. He stated that he did not know that the plaintiff was buying the ticket with the expectation of returning on that train, and that the plaintiff

did not ask him whether it stopped at Higginson. Among other instructions given to the jury were the following, to which the defendant objected:

3. The jury are instructed that the conductor of a passenger train, while in charge of and running the same, represents the company; and if the conductor of the train No. 1, or conductor who had hitherto been in charge of and running said train, had been in the habit of stopping at Higginson in the night time and taking on passengers, upon being signaled with a light to do so, that by so habitually stopping the said train at said station, operated as a waiver of any rule or regulation of the said company, whereby said conductors were directed not to stop at said station.

5. If you find that the train No. 1 was in the habit of stopping at Higginson in the night time to take on passengers when signalled to do so with a light reflected from a lantern swung at or near the track, and the plaintiff was at said station on the night mentioned in the complaint, with a ticket entitling him to a ride on the said train, and that the usual signal was given, and the defendant company failed or refused to stop the said train and take plaintiff on, you will find for the plaintiff.

6. The court instructs the jury that the defendant company has the right to make reasonable rules and regulations for the running of its trains; the reasonableness of such rules are questions for you to determine, and if you find, from the evidence, that the defendant had a regulation whereby train No. 1 was forbiden to stop at the station of Higginson, and you find that the said regulation was unreasonable, and you find that the plaintiff was at the said station of Higginson on the night complained of, offering himself to be carried, with a ticket entitling him to ride on the said train, you will find for the plaintiff.

The verdict was for the plaintiff, and the defendant having been refused a new trial, appealed.

*Francis Johnson* and *Dodge & Johnson*, for appellant.

1. Where the facts are not disputed, it is error for the court to submit to the jury the question whether a rule adopted by a railroad for the government of its trains is a reasonable one or not. Such a question is one purely of law, and must be determined by the court. *43 Ill., 420; 20 N. Y., 126; 49 Ark., 357.* Railroads may make reasonable regulations as to the mode of their performance of their duties as carriers. *46 N. H., 213; 11 Metc., 121; 11 Ohio St., 457; 50 Ind., 141; 12 A. & E. R. Cases, 142.*

See, also, *103 N. Y., 82; 33 Oh. St., 234; 46 N. H., 220; 45 Ark., 263; 47 id., 79.*

It was plaintiff's duty to inform himself whether the train stopped at his destination. *45 Ark., 256; 49 id., 357; 40 id., 298; 47 id., 79.*

The fact that the regulation had been violated by the company's servants did not deprive the company of the right to begin its enforcement when it deemed fit. *49 Ark., 360; 9 A. & E. R. Cases, 314.*

2. There was no obligation on the company to stop its trains at Higginson at night. It was only a small way station, between two regular stations. Two daily trains stop there, going each way. That was sufficient. *Thompson on Carriers, pp. 65, 66; 23 N. W. Rep., 414.*

*T. J. Oliphint*, for appellee.

1. The evidence shows that train No. 1 *habitually* stopped at Higginson upon being *flagged,* so that the public had a right to presume that the train would stop as *usual*, and its failure to do so made the company liable. *4 West. Rep., 797; Thomps. on Car. Pass., pp. 345–6; Patterson on Railway Ac.. 325; 2 So. Rep., 831; 9 West. Rep., 117; 24 Am. Law Reg., 573; 2 Cent. Rep., 726; 1 West. Rep., 812; Pierce on R. R., 498; 110 U. S., 667–86.*

Rules and regulations for the running of trains are questions of law and fact, while the reasonableness of a by-law is

Railway v. Adcock.

a pure question of law. *Rorer on R. R., p. 226.* Rules and regulations as to stopping at stations are questions of mixed law and fact, and, therefore, for the jury. *Thompson on Carriers of Pass., p. 335; 84 Ill., 109, 116; 23 Vt., 387; Thomson on Trials, sec. 1567; 24 N. J. L., 435; 15 Minn., 49; Thomp. Car. Pass., 306, 311; Redfield on Ry., 95.*

When appellee purchased a round-trip ticket, it was the duty of the agent to inform him that No, 1 did not stop at Higginson at night. By his silence he misled the appellee to his damage. *45 Ark., 263; Patt. Ry. Ac., secs. 37, 97; 4 West. Rep., 797; 54 Wisc., 234; 5 Daly (N. Y.), 50; 50 Tex., 443; 47 Mich., 277; 50 Ind., 141.*

1. RAIL-
ROADS:
Regula-
tion as to
flag sta-
tions.

2. Same.

PER CURIAM. The refusal of a railway company to designate as a flag station for its through trains a place which is not an incorporated town, which contains only a few houses and is situated within three miles of a regular station, is not an unreasonable regulation. The facts being uncontroverted, it was the province of the court to declare the regulations reasonable. To submit the question to the jury for determination, under such circumstances, was simply to leave the matter to their discretion, which was error.

3 Failure
to stop for
passenger.

II. If the plaintiff, without fault of his, was mislead by the company's custom into believing that the place was a flag station for night passenger trains, then his right to recover was the same as though he had been misdirected by its authorized agent. *Atkinson v. Ry., 47 Ark., 74; Hobbs v. Ry., 49 ib., 357; 2 Woods Ry., p. 1174.* It would be otherwise if he was not informed of, or had not relied upon the custom; or if the stoppage of trains was only casual and not habitual. The charge upon that phase of the case was too restricted.

If the company's agent, from whom the plaintiff purchased his return ticket, was informed and understood that the plaintiff purchased the ticket with the intention of using it to return from his destination on the night train, it was the agent's duty to notify him that the train would not stop at his

destination, and the court so instructed the jury. If it were certain the agent had knowledge of the plaintiff's intent, and permitted him to act when it was his duty to speak, we would affirm the judgment, notwithstanding the errors pointed out; but the evidence is conflicting upon that point and we cannot say how far the jury were mislead by the false charge.

The judgment must be reversed and the cause remanded for a new trial.