Lida A. Kennelty, Appellant, *v.* Baltimore & Ohio Railroad.

*Negligence—Railroads—Train orders—Fellow servants.*

Where a special order is given to an engineer of a train which is late, to run to the terminus two hours late, and the testimony shows that the special order was to be read in connection with the general rules of the company, and meant that the train would have a track clear of all freight trains, but that it must run with reference to the schedule of all passenger trains, and the engineer, disregarding the rule, negligently runs into a passenger train ahead of him running on the schedule time, and kills a brakeman on that train, the brakeman's widow cannot recover damages from the company, since the accident was caused by the negligence of a fellow servant of the deceased.

Argued Nov. 8, 1894. Appeal, No. 300, Oct. T., 1894, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., Sept. T.,

1893, No. 492, refusing to take nonsuit.　Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.　Affirmed.

Trespass for death of plaintiff's husband.

The facts appear by the opinion of the Supreme Court.

When W. C. Day, a witness for plaintiff, was on the stand, he was asked: " Q. Now, wouldn't you consider it better rail-roading if an order had been sent out to No. 37 to look out for No. 5, and an order sent to No. 5 to look out for No. 37, and also an order sent to the station agent at Glenwood to hold No. 5 ? "

Objected to as incompetent and irrelevant.

Objection sustained. [1]

The court afterwards ruled that if ground was laid to show that the party was called as an expert his testimony would be admitted.　He was not recalled however.

The court entered a compulsory nonsuit, and subsequently refused to strike it off.

*Errors assigned* were (1) ruling, quoting bill of exception, (2) refusal to strike off nonsuit.

*James S. Young, S. U. Trent* with him, for appellant, cited, Lewis v. Seifert, 116 Pa. 647.

*Johns McCleave, D. T. Watson* with him, for appellee.—Rules which, if observed by employees, will prevent collisions, are sufficient.

The evidence ruled out would have been received if the witness had qualified himself to testify as an expert.

OPINION BY MR. JUSTICE FELL, Jan. 7, 1895 :

The plaintiff's husband was employed by the defendant as a brakeman and assistant baggage master.　He was killed by a collision of the train on which he was employed with another passenger train which ran into it from the rear.　The accident was the result of gross negligence, and upon the trial the only question was whether the negligence was that of a co-employee in disregarding the rules for the movement of trains or of the defendant in not providing a safe schedule.

Both trains were running west on the same track towards Pittsburg. Train No. 37, on which the deceased was riding, was running on its schedule time. Train No. 5, which ran into it, reached Rockwood, one hundred miles east of Pittsburg, two hours and eleven minutes late, and the engineer there received a telegraphed order to run to Pittsburg two hours late. The schedule time of the arrival of train No. 37 at Pittsburg was 10.50 P. M., and that of train No. 5 was 8.30 P. M. Running two hours late under the special order this train would reach Pittsburg at 10.30 P. M. A literal compliance with the order would have required train No. 5 to pass train No. 37 and any other local trains which were in its way on the west bound track, and would have required additional orders to all such trains to get out of the way.

All the testimony shows that this special order was to be read in connection with the general rules of the company for the running of trains, and that it was so understood by every one connected therewith. It meant that No. 5 should run two hours late and would have a track clear of all freight trains, but that it must run with reference to the schedule of all passenger trains. It imposed upon those charged with the running of the train the duty to observe the schedule time of all passenger trains, and to run ten minutes behind the time of the train which it followed to Glenwood, and five minutes behind it from there to Pittsburg. It appeared that this was distinctly understood by the trainmen who received the order, and that the collision resulted from their neglect. Within a few miles of the point where the accident occurred the conductor of train No. 5 was aware that they were running too fast, and signalled the engineer to reduce the speed, and when within a few hundred feet of the point he knew that they were close upon time of train No. 37. A moment before the collision, but when too late, he directed the baggage master to look out the side door for the train.

It was clearly shown by the testimony produced by the plaintiff that the collision was caused not by an unsafe schedule or defective rules, but that it was due to the reckless disregard of clearly defined and well understood duties by those in charge of the train. As they were co-employees of the plaintiff's husband there was nothing to leave to the jury, and the nonsuit was properly entered.

We find no error in the refusal of the offer of testimony which is the subject of the first assignment. It should be observed that this ruling was subsequently modified to admit the testimony on proof that the witness was qualified to speak as an expert. The offer did not raise a question as to the safety of the schedule and the rules adopted by the defendant for the operation of its road, or of any orders given at the time. The witness was asked for an opinion as to whether it would have been " better railroading if an order had been sent out to No. 37 to look out for No. 5 and an order sent out to No. 5 to look out for No. 37, and also an order sent to the agent at Glenwood to hold No. 5." It is not apparent that the trainmen of No. 37 could have done more under a special order than they did to give notice to No. 5, which followed them. They were in charge of a regular passenger train running on schedule time and having schedule rights, and had taken the usual precaution of fixing signal lights on the rear platform of the last car. It was a clearly defined duty of the trainmen of No. 5 to look out for No. 37, and no special order would have made it clearer. They knew this, and they knew the time of the train, and knew that they were encroaching upon it. Train No. 5 passed Glenwood station as it should have done five minutes after train No. 37 and even with a special order, as each train was in its proper position on the road, there would have been no reason for holding it.

The judgment is affirmed.