## LITTLE ROCK & M. R. CO. v. BARRY.

(Circuit Court of Appeals, Eighth Circuit. January 31, 1898.)

### No. 804.

1. MASTER AND SERVANT—PERSONAL INJURIES—RAILROAD COLLISIONS—RULES FOR RUNNING TRAINS.

Rules adopted by railroad companies for the management of trains are presumably selected as the best for avoiding accidents, and, unless clearly shown to be palpably unreasonable or insufficient, the company should not be charged with negligence on account of their adoption and use.

2. SAME.

In an action by a railroad engineer to recover for personal injuries received in a rear-end collision, it appeared that, by the rules of the company, employés in charge of trains were not to be notified as to the position and movements of other trains, but were required to protect themselves by sending out flagmen, and putting torpedoes on the track, in case of unusual stoppages. These rules were adopted pursuant to the recommendation of a committee of experts, and were in force on more than 58,000 miles of railroad in this country. Three experts testified that these rules were better calculated to prevent accidents, by always requiring trainmen to be vigilant, than was the opposite rule, of attempting to keep them informed as to the position of all trains. Three other experts testified that in the particular case the engineer and conductor of each train should have been notified of the location and movements of the other. *Held*, that it was error to charge that, in sending out special trains, due and sufficient notice should be given of the whereabouts of all other trains which are liable to be met or overtaken.

3. SAME—ASSUMPTION OF RISKS.

A railroad engineer, taking service under reasonable rules adopted by the company for the operation of trains, without objecting thereto, assumes the risk arising from their nonobservance by employés operating other trains.

**4. Same—Reasonableness of Rules—Question of Law.**

When a railroad company has deliberately adopted a system of rules, which have been made familiar to its employés, and its road is operated under them, the reasonableness and sufficiency of these rules are questions of law, and not of fact for the jury.

**5. Same—Personal Injuries—Proximate Cause.**

The engineer of an extra passenger train was injured by a collision of his train with the rear end of a delayed freight train, of whose position he had not been notified. The employés of the freight train had entirely failed to observe the company's rules, requiring them, in case of stoppage, to send out a flagman, and place torpedoes on the track. *Held* that, even if free from negligence himself, and if it were negligence on the part of the company not to notify him of the position of the freight train, or not to notify the freight-train employés of the approach of the extra passenger train, still the proximate cause of the injury was the negligence of his co-employés in charge of the freight train.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

G. B. Rose (U. M. Rose and W. E. Hemingway, on the brief), for plaintiff in error.

J. M. Moore and W. L. Terry, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge.    About 2 o'clock in the afternoon on October 26, 1890, engine No. 5 of the Little Rock & Memphis Railroad Company ran into the rear of a freight train on the railroad of that company; and G. F. Barry, the defendant in error, who was the fireman on this engine, leaped from it, and was injured. He sued the company for damages, and alleged that he was injured by its negligence in employing an incompetent conductor upon the train his engine drew, and in failing to give notice to its servants in charge of engine No. 5 of the whereabouts and movements of the freight train, and in failing to give notice to its servants in charge of the freight train of the whereabouts and movements of engine No. 5. The plaintiff in error, the railroad company, answered that its conductor was not incompetent, and that it was not its duty to give the conductor and engineer of either of the trains which collided notice of the movements or whereabouts of the other. Upon these two issues the testimony was conflicting, and the jury found for the defendant in error. These facts, however, were uncontradicted: The railroad of the plaintiff in error extends from Hopefield, a town opposite Memphis, in the state of Tennessee, westward to Little Rock, in the state of Arkansas. The first telegraph station west of Hopefield is Edmondson, 15 miles distant, and the second is Forrest City, 47 miles distant. Argenta is a station still further west, near the city of Little Rock. The freight train was a regular train. It had left Hopefield at 3:50 a. m.; was due at Edmondson at 5 a. m., but had been so delayed that it did not leave that station until 9:40 a. m., 4 hours and 40 minutes later than its schedule time; and while it was standing on the main track, on a curve in a deep cut outside the yard limits, about half a mile east of Forrest City, at about 2 o'clock in the afternoon,

84 F.—60

engine No. 5 crashed into the rear of it. The engineer in charge of this engine had passed this freight train at Edmondson at 9:30 that morning, on his way east to Hopefield, and he knew it was late. When the superintendent of the company delivered the order, under which the train drawn by engine No. 5 was operated on this day, to its conductor, he told him to look out for this freight train, as it was still in the bottom between Edmondson and Forrest City; and the conductor repeated this warning to the engineer when he communicated the order to him before leaving Hopefield. In the early part of this day a military company, which arrived at Memphis too late for the regular passenger train, engaged of this railroad company an extra train to take it to Little Rock, and the engineer and fireman of engine No. 5 were directed to draw this train with their engine. The freight train was, as we have said, a regular train, and it was known as "No. 5." This was the order under which the extra ran:

Little Rock & Memphis Railroad.

Telegraphic Train Order No. 5                31

Memphis, Oct. 26, 1890.

To C. & E. of Eng. 5, Hopefield

C. & E. No. 5 at Forrest City

C. & E. Eng. 4 & No. 6 Brinkley

Engine 5 will run from

Hopefield to Argenta extra

when No. 5 is overtaken pass

and run ahead of them

.meet No. 6 and Eng. 4 at

Brinkley, do not pass Brinkley

Unless Eng. 3 is there.

A. J. W.

The rules of the company made this extra train inferior in grade to the regular freight train, under this order, and imposed upon its conductor and engineer the duty to keep out of the way of that freight train, which they knew was somewhere upon the single track in front of them. These rules also required the crew of the freight train, when it stopped and stood, as it did, for three-quarters of an hour before the accident occurred, on the curve, in a deep cut, one-half mile east of Forrest City, to immediately station and maintain a flagman 10 or 12 telegraph poles in the rear of its train, and to place torpedoes on the track, not less than 15 telegraph poles behind it, for the purpose of warning and stopping approaching trains which might follow it. These rules gave the employés of the company notice that it proposed to use its railroad for the passage of trains at any time it chose, and that they must protect themselves against their approach. The engineer of the extra train, however, did not keep his engine under control, so that he could stop it when he saw the freight train, but he drove it on with such speed that it was impossible for him to prevent the collision after he came in sight of the regular train; and the crew of the freight train failed to give warning to the

approaching extra of the presence of their train, either by torpedo or by flagman. In short, these fellow servants of the defendant in error were guilty of gross negligence, without which it is highly improbable, if not impossible, that the accident could have occurred.

One of the rules of the company, however, required all orders to be given in writing, where practicable; and counsel for the defendant in error insisted that the company was negligent because it did not insert in the written order to the men in control of the extra train a statement that the freight train was delayed east of Forrest City, and an admonition to beware of it, and because the train dispatcher did not stop the extra train at Edmondson, as it passed there, and notify its crew again that the freight had not reached Forrest City. In support of their view, three witnesses for the defendant in error, who had had experience in railroading, testified that in their opinion this course should have been pursued. On the other hand, it appeared by the evidence that this railroad was operated under the standard rules, which were prepared some years ago by experienced railroad men chosen for the purpose by the officers of various railroad companies, and that they had been subsequently so generally adopted, as the best in use, that, in 1888, 58,000 (and at the time of the trial many more) miles of railroad were governed and operated under them. Three witnesses of skill and experience in the operation of railroads, who were familiar with these rules, and the practice of railroads under them, testified, in effect, that in their judgment, and in the judgment of those who had prepared and adopted them, they were the best and the most conducive to safety of any rules in use in this country; that it is more conducive to the safety of the operation of railroads to require the men in charge of a train to look out for, and protect themselves at all times against other trains and engines, without notice of their whereabouts and movements, than it is to undertake to give them notice of these movements and whereabouts, and this for the reason that if men receive, and come to expect, notice of approaching trains, they will invariably relax their vigilance, and rely upon the notice, rather than upon their watchfulness, for their safety, and that in the long run they will be caught in danger more frequently, and more accidents will happen at times when it is impossible or impracticable to convey notice to them, than would occur if they were spurred to constant watchfulness by the knowledge that a train was liable to come upon them at any time without notice. These witnesses testified, in substance, that this was the theory upon which the standard rules were based, and that they did not require the superintendent or train dispatcher to give the men in charge of either of these trains notice of the whereabouts or movements of the other. They also testified that in their opinion neither the duty of the company, nor the safety of its servants, required that the crew of either train should have notice of the movements or whereabouts of the other, or that the extra train should be stopped at Edmondson, and its conductor or engineer informed that the freight was still between that station and Forrest City, where they knew it to be when they started. In this state of the evidence, it is assigned as error that the court charged the jury:

"In sending out special or extra trains, due and sufficient notice of the movements and whereabouts of all other trains and locomotives which are liable to be met or overtaken by the special or extra should be given to the officers or servants in charge of such trains. And due notice of such special or extra train should, in like manner, be given to the servants in charge of such other trains, as far as may be necessary to guard against and prevent accident. And if, from any cause, it is impracticable to give such notice, then such other precautions as are reasonably adapted to prevent danger of collision or accident should be taken. If the jury believe from the evidence that the defendant, through any default or neglect on its part, failed to perform the aforesaid duties, and that the collision was caused by such failure, and that thereby plaintiff sustained the injuries complained of, the defendant is liable in this action."

This instruction is a plain declaration that the theory which the wisdom and experience of many of the most careful and intelligent railroad operators have deemed most conducive to the safety of their employés, their passengers, and their property, is unsound, that the rules based upon it are unreasonable, and that the operation of a railroad in accordance with it is negligence. Such a declaration of the law ought not to be made without clear and convincing proof, nor without the most careful and deliberate consideration. The theory upon which these rules are based, the rules themselves, and the operation of railroads in accordance with them, have all received the sanction of respectable authority. Railroad Co. v. Neer, 26 Ill. App. 356, 360; Id., 31 Ill. App. 126, 134, 139; Kennelty v. Railroad Co. (Pa. Sup.) 30 Atl. 1014; McGrath v. Railroad Co., 15 R. I. 95, 97, 22 Atl. 927; Wright v. Railroad Co., 25 N. Y. 562, 569. It does not seem unreasonable to suppose that men who are warned that other trains will pass over the railroad on which they are operating without notice to them, and that they must watch for and protect themselves against them at all times, would operate their trains with more care and fewer accidents than they would if an attempt were made to notify them of the whereabouts and movements of all trains, in view of the fact that the expectation of such notice might relax their vigilance, and that they would often be in locations where it would be impossible to give them the notices. If experience has proved this supposition to be in accordance with the fact, and has led to the adoption of rules which do not require, but discountenance, such notices, because the habit of giving them has been found to increase the number and danger of accidents, as the adoption of these standard rules by so many railroad companies, and the testimony of the experienced witnesses who are operating railroads under them, tend to show, it cannot be said that it was the duty of the defendant to give these notices, nor that its failure to give them was negligence. The fact is not forgotten that the defendant in error produced three witnesses who testified that such notices should have been given. But in our opinion their testimony is insufficient, in the face of the evidence of three witnesses of equal credibility who testified to the contrary, to so clearly establish the vice of the theory, and the unreasonableness of the rules and practice which companies operating more than 58,000 miles of railroad have adopted as the best and most conducive to safety, as to warrant a court in so declaring as a matter of law. The skilled and experienced railroad oper-

ators who seem to have developed this theory and formulated these rules are undoubtedly more competent than jurors or judges to select and prepare rules most conducive to the safe, economical, and prosperous operation of railroads.    The interest of the owners of these railroads, the interest and ambition of those who operate them, alike prompt them to select and use the best; and, unless the rules they adopt are clearly shown to be palpably unreasonable or clearly insufficient, railroad companies ought not to be charged with negligence on account of their adoption and use.    Vedder v. Fellows, 20 N. Y. 126, 133; Enright v. Railway Co. (Mich.) 53 N. W. 536.    In our opinion, there was no such proof in this case; and at the close of the trial the court should have instructed the jury that the system of rules, and practice under them, which the company had adopted, was neither unreasonable nor insufficient.    The defendant in error and the other servants of the company were familiar with these rules, and the theory upon which they were based.    By taking service under them without objection or protest, they assumed the risks and dangers of the theory that every employé who operates trains must beware of other trains moving in the same direction, without notice of their whereabouts, and the risks and dangers of the system of rules which was based upon this theory.    Wolsey v. Railroad Co., 33 Ohio St. 227.    When a railroad company has deliberately adopted a system of rules, which have been made familiar to its employés, and its railroad is operated under them, the reasonableness and sufficiency of these rules are questions of law, and not of fact. These questions must be determined by the court, because there is no other way in which a set of rules may ever be established or adjudicated as either reasonable or sufficient.    It may be said that trial judges often differ upon questions of this character.    But the answer to this objection is that the appellate court will finally settle them, and in the end a substantial uniformity of decision as to the reasonableness and sufficiency of any set of rules in general use must eventually result, if these questions are left to the determination of the courts.    If, on the other hand, they are remitted to the juries, their various findings can result in little less than confusion worse confounded.    The decision of an appellate court becomes a precedent for the rulings of many inferior courts.    But the finding of one jury is no precedent for the decision of another, and a rule that is found to be reasonable by one jury will frequently be thought to be unreasonable by another; and no criterion will ever be established by which railroad companies may measure their duties in this regard, if the reasonableness and sufficiency of their rules are to be daily submitted to new tribunals, which are governed by no precedent, and are without experience in the determination of these questions. We adhere to the view of this question expressed by Judge Caldwell in the opinion of this court in Railway Co. v. Dye, 36 U. S. App. 23, 28, 16 C. C. A. 604, 607, and 70 Fed. 24, 27, which is supported by the following authorities, among others:    Vedder v. Fellows, 20 N. Y. 126, 130; Railway v. Adcock, 52 Ark. 406, 410, 12 S. W. 874; Railway Co. v. Hammond, 58 Ark. 324, 334, 24 S. W. 723; Railroad Co. v. Whittemore, 43 Ill. 420, 423; Railroad Co. v. Flem-

ing, 18 Am. & Eng. Ry. Cas. 347, 352; Tracy v. Railroad Co., 9 Bosw. 396, 398, 402; Hoffbauer v. Railroad Co., 52 Iowa, 342, 343, 3 N. W. 121.

Moreover, the court, in effect, told the jury by this instruction that, if they believed that the collision occurred through the failure or neglect of the railroad company to give these notices, the defendant in error might recover. It is difficult to understand what basis there is in this case, under the admitted facts, for a finding that a failure to give these notices caused this collision. If we concede that the failure to write the notice which was verbally given to the conductor and engineer of the extra train at Hopefield, that they must look out for the freight train which was in the bottom between Edmondson and Forrest City (an unreasonable concession, except for the sake of argument), and the failure to stop the extra train at Edmondson, and notify its conductor and engineer that the freight train was still there, and the failure to send a courier from Forrest City, or some other point, to the freight train, to notify its conductor and engineer that the extra train was coming, constituted negligence, there still remains what seems to us an insuperable obstacle to a recovery on this ground. An injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable. An injury that is not the natural consequence of an act or omission, and that would not have resulted but for the interposition of a new and independent cause, is not actionable. Railway Co. v. Elliott, 12 U. S. App. 381, 386, 5 C. C. A. 347, 350, and 55 Fed. 949, 952; Finalyson v. Milling Co., 32 U. S. App. 143, 151, 14 C. C. A. 492, 496, and 67 Fed. 507, 512; Railway Co. v. Bennett's Adm'x, 32 U. S. App. 621, 16 C. C. A. 300, and 69 Fed. 525; Railway Co. v. Callaghan, 12 U. S. App. 541, 550, 6 C. C. A. 205, 210, and 56 Fed. 988, 993; Railway Co. v. Moseley, 12 U. S. App. 601, 609. 6 C. C. A. 641, 646, and 57 Fed. 921, 926; Insurance Co. v. Melick, 27 U. S. App. 547, 557, 12 C. C. A. 544, 550, and 65 Fed. 178, 184. It was the duty of the engineer and conductor of the extra train to look out for and to so operate their train that their engine would not crash into the freight which they knew was on the track before them. It was the duty of the engineer of that train, who alone could see the track in front of him, to so govern the speed of his engine that he could at any time stop it within the range of his vision. It was the duty of the crew of the freight train to place torpedoes on the track at least 15 telegraph poles in the rear of their train when it stopped at the place of the collision, and to station a flagman 10 or 12 telegraph poles behind that train. The railroad company had the right to presume that its servants on these trains would obey its rules and discharge these duties, and it had the right to act upon that assumption. It was its right to calculate the natural and probable result of its acts and omissions upon this supposition. Indeed, it could reckon upon no other, for it is alike impracticable and impossible to predicate and administer the rights and remedies of men on the theory that their associates and servants will either disregard their duties or violate the laws. Now, no one who reckoned on the faithful discharge of their duties by these employés could reasonably

have anticipated this fatal collision as either a natural or probable consequence of the failure to give these notices. Nor could it have been the result of such failure, had not the unforeseen negligence of the engineer of the extra train, and the gross and unexpected carelessness of the crew of the freight train, intervened to interrupt the natural sequence of events, to turn aside their course, and to prevent the safe operation of these trains, which was the natural and probable result of the rules and the orders which the defendant gave. It was the gross negligence of these servants, which no one could anticipate, that constituted the intervening and proximate cause, without which this collision could never have been; and it is to this, and not to the failure to give the notices, in our opinion, that this accident must be attributed, under the maxim, "Causa proxima, non remota, spectatur."

There are many other errors assigned in this case, and many other questions discussed in the briefs of counsel, but the case must be retried on account of those to which we have referred. What has already been said will be a sufficient intimation of our views to guide the court in the coming trial, and it would be unprofitable to extend this opinion by the discussion of other questions which may not again arise. The judgment below must be reversed, and the cause remanded to the court below, with directions to grant a new trial; and it is so ordered.

THAYER, Circuit Judge. I concur in the view that the case should be reversed for error in the instruction which is quoted above, in the opinion of the majority of the court. There was a controversy before the jury as to whether the engineer and conductor of the extra train ought to have been notified at Edmondson that freight train No. 5 had not arrived at Forrest City, and that they must keep a sharp lookout for the freight train between the two stations last mentioned. Three expert railroad men, who were called as witnesses for the plaintiff below, testified, in substance, that such notice ought to have been given; that as the engineer of the extra train would naturally infer that the freight train had reached Forrest City by the time the extra train reached Edmondson, since the freight train was then overdue at the former station, he ought to have been notified by the train dispatcher at Edmondson that such was not the fact, and that for some unknown reason the freight train had been delayed, and was not where it would very naturally be expected to be. In other words, three railroad men expressed the opinion, in substance, that, as applied to the facts existing when the extra reached Edmondson, the standard rules were not adequate to afford protection to trainmen and passengers, but that some further precautions ought to have been taken by the train dispatcher. Several witnesses for the defendant company expressed a contrary opinion, namely, that the standard rules were sufficient to meet any and every emergency, and that no additional notice ought to have been given at Edmondson. This was one of the crucial issues in the case, to which the attention of the jury should have been more specifically directed. The instruction above quoted, which was given by the

court, was couched in very general language, and was liable to be understood by the jury as meaning that it was the duty of the train dispatcher, in any event, and without reference to the existence of the rules, to have given notice at Edmondson that the freight train had not arrived at Forrest City. Being too general, as applied to the issue of fact above stated, and for that reason being liable to mislead, I agree that the case should be reversed, and a new trial ordered.

Other views, however, are expressed in the opinion of the majority of the court, to which I cannot assent. It is held broadly, as I understand, that when a railroad company adopts rules for the operation of its trains, or for the management of its business, and puts them in force, the question as to the reasonableness and sufficiency of such rules to afford protection to its employés and to the traveling public is always a question of law to be decided by the court. In my judgment, this proposition is not tenable, either upon principle or authority. When a controversy arises in a court of justice touching the reasonableness or sufficiency of a code of rules that has been adopted by a corporation or individual for the management of their business, and competent witnesses express different opinions upon that subject, an issue of fact is presented, which can only be determined by a jury, unless a trial by jury is waived. Judges cannot arrogate to themselves the power of determining such questions, on the ground that such practice insures greater unanimity of opinion, or on any other ground, without denying suitors their constitutional right of a trial by jury. The cases cited by the majority of the court in support of the proposition that the question whether a given code of rules is reasonable and sufficient is one of law (with one exception, to wit, Railway Co. v. Whittemore, 43 Ill. 420, 423) were all cases where a rule or regulation was introduced without any testimony tending to show whether the regulation was reasonable or otherwise, and the decisions were simply to the effect that in such cases the court could properly decide as to reasonableness of the regulation. In three of the cases, and particularly in the case of Vedder v. Fellows, 20 N. Y. 126, 131, to which all the other cases refer as the foundation of the doctrine, it was clearly intimated that the reasonableness of a regulation is a question of fact for the jury when there is a conflict of testimony upon that issue, and it is difficult to conceive how the rule could be otherwise without ignoring fundamental principles. In the case of Railway Co. v. Adcock, 52 Ark. 406, 410, 12 S. W. 874, the court said, "The facts being uncontroverted, it was the province of the court to declare the regulations reasonable." The same remark was quoted with approval in the subsequent case of Railroad Co. v. Hammond, 58 Ark. 324, 334, 24 S. W. 723; and in a late case in New York (Abel v. Canal Co., 128 N. Y. 662, 666, 667, 28 N. E. 663), where the sufficiency of a code of rules which had been adopted by a railway company was challenged, and there was some testimony on that subject besides the rules themselves, it was held that the issue presented was properly submitted to the jury. I conclude, therefore, that the reasonableness of a regulation is a question of law for the court only in those cases where no testimony is offered tending to show whether it is reasonable or otherwise, and

that where, as in the case at bar, there is a conflict of testimony on such issue, the question is one of fact for the jury.

In the opinion in chief it is further held that the defendant company is not liable to the plaintiff, even if it was guilty of negligence in failing to inform those in charge of the extra train at Edmondson of the then whereabouts of the freight train. This conclusion is based on the ground that the negligence of the defendant company was not the proximate cause of the accident, but that the accident was solely occasioned by the fault of certain fellow servants of the plaintiff. I am not able to assent to this proposition. If, as the testimony for the plaintiff below tended to show, the rules were insufficient for the protection of trainmen and passengers, as applied to the conditions existing when the extra train reached Edmondson, and if at that station the train dispatcher ought to have given the information last above specified to the engineer and conductor of the extra train, then, in my judgment, it was the right of the jury to determine whether such omission of duty on the part of the defendant company directly contributed to the accident. The question as to what was the proximate cause of an injury is ordinarily not one of legal knowledge, but of fact, for the jury to determine, in view of all the accompanying circumstances. Railway Co. v. Kellogg, 94 U. S. 469, 474. And in the case at bar the jury might well have reached the conclusion that a word of caution spoken at Edmondson to the engineer in charge of the extra train would have prevented the disaster. The operator at Edmondson evidently thought that the extra train ought to be warned that the freight train had not reached Forrest City, for as it came into view he said to the train dispatcher, over the wire: "Here comes the special. Have you any orders for it?" The engineer of the extra train well knew that sufficient time had elapsed to enable the freight train to reach Forrest City, and he doubtless supposed that it had passed that station some time before the extra reached Edmondson. If he had been warned that it had not reached Forrest City, he would doubtless have exercised a degree of care commensurate with the conditions which actually existed, and the jury might reasonably have found that the failure to give such warning directly contributed to the injury. Moreover, the fact that certain fellow servants of the plaintiff were also guilty of negligence did not absolve the defendant company from liability for its own neglect of duty, or that of its train dispatcher, since it is well settled that it is no excuse for a master, when sued by his servant, that the negligence of a fellow employé, as well as his own, contributed to occasion the injury. For these reasons I cannot concur in the views of my associates, that they have the right to determine that the negligence of the defendant company was not the proximate cause of the accident.