## Eunice E. Clark, Administratrix of the Estate of Frank P. Clark, deceased, v. The Wabash Railroad Company.

1. INSTRUCTIONS—*Verdict for the Defendant.*—In an action against a railroad company for damages resulting from a death caused by negligence, it not appearing from the plaintiff's evidence that anything which the company had done tended to render the risks of the service more

hazardous than they ordinarily were, and it not appearing that the deceased was in the exercise of ordinary care for his personal safety, the jury were properly directed to return a verdict for the defendant.

**Memorandum.**—Action for damages. Death from negligent act. Error to the Circuit Court of Sangamon County; the Hon. Jacob Fouke, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed November 27, 1893.

The opinion states the case.

Geo. B. Burnett, attorney for defendant in error.

Brief for Plaintiff in Error, Brown, Wheeler & Brown, Attorneys.

Where the evidence tends to prove the issue, and it becomes necessary to give effect to it by weighing it, the province of the jury is invaded by taking the case from the jury. This is the only reasonable view to be taken so long as the trial by jury is maintained. If the court is to weigh the testimony, there is no duty for the jury to perform. In support of this view we cite the following cases: Pennsylvania Co. et al. v. Ellitt, Adm'r, 132 Ill. 654; Hall et al. v. First Nat. B'k of Emporia, 133 Ill. 234; Chicago, St. L. & P. R. R. Co. v. Gross, Adm'r, Ibid. 37; Miller v. Pence et al., 131 Ill. 122; Anthony et al. v. Wheeler, 130 Ill. 128; Wright Fireproofing Co. v. Poezekai, Ibid. 139; Chicago & N. W. R. R. Co. v. Dunleavy, Adm'r, 129 Ill. 132; Hodges v. Bearse, Ibid. 335; Chicago & N. W. R. R. Co. v. Snyder, Adm'x, 128 Ill. 655; Hamburg-American Packet Co. v. Gattmann, 127 Ill. 598; The People v. People's Insurance Ex change, 126 Ill. 466; Chicago, Mil. & St. P. R. R. Co. v. Krueger, 124 Ill. 457; 23 Ill. App. 639; L. S. & M. S. R. R. Co. v. Brown, Adm'x, 123 Ill. 162; O'Sullivan, Adm'r, v. C., M. & St. P. R. R. Co., 23 Ill. App. 646; Wood, Adm'r, v. Ill. C. R. R. Co., Ibid. 370; The People, etc. v. Nedrow, 16 Brad. 192; Whalan, Adm'r, v. Ill. & St. L. R. R. & C. Co., Ibid. 320; Reidle v. Mulhausen, 20 Brad. 68; Hinsdale-Doyle Granite Co. v. Armstrong, 6 Brad. 315; Waller v. Carter, 8 Brad. 511; Ward v. City of Chicago, 15 Brad. 98.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This was an action on the case brought by plaintiff in error to recover damages for the death of Frank P. Clark, her intestate, alleged to have been caused by negligence of the defendant in error.

When she rested her case the defendant moved the court below to exclude the evidence and direct a verdict of not guilty, which was allowed, and a verdict returned accordingly. The propriety of this action on the part of the court is the main question presented by the assignments of error.

It appears that the deceased was engineer of defendant's fast passenger train, No. 42, going east from Springfield to Tilton in the night of August 7, 1891, and that at a point a short distance west of the west switch at Homer it ran into the second section of the freight train, No. 92, on the same track and going in the same direction, whereby he was killed. His train being late, he received a special order from the train master at Decatur, to run twenty minutes behind its schedule time, a copy of which was furnished to each section of the freight. By this extension it would be due to pass Sidney, which is a little over six miles west of Homer, at 11:59 P. M. It was not scheduled to stop at either of those places. Sidney was a telegraph station, with an operator in defendant's employ, and connected by working wire with the office of its train master, and also a signal maintained for the purpose of stopping trains for orders.

Clark had been running as engineer in that district eight years. He frequently hauled freight trains. He was perfectly familiar with the rules and practice of the company in reference to the running of its trains. One of these rules was as follows: " Passenger trains in passing through stations without stopping will reduce their speed before passing the first switch and run carefully through section limits till they know the track is clear." Others prescribe that a train of inferior rank must clear the time of trains of superior rank at least five minutes; that is, must be on the side track, have switches set up and everything clear at

least five minutes before the train of superior rank is due; and if a freight train is stopped on the main track by any obstruction whatever, the flagman, who is the rear brakeman, is required to go back immediately a certain distance with prescribed signal lanterns, put on the track two torpedoes, thirty feet apart, and remain within a short distance until called in by the whistle of his engine, when he is to remove one of them and return to the train. The red light swung across the track horizontally with it, is a signal of danger, which the engineer of the following train must answer with two short blasts of the whistle, indicating that he has seen it, and shut off steam and stop as soon as he can. On the rear of each freight train caboose are three red lights, one in the cupola and one on each side at the end. These red lights indicate a freight train and on the main track. When it is in, so as to clear that track, these lamps are turned, showing green to the rear. They are provided with sockets so that they can be turned and held in a certain position. Those lights could be seen at Homer from the west for a little over two miles, the track being straight and clear.

These are standing general regulations, printed on the time card furnished to every engineer. All the trains on appellee's road are regular and scheduled, and these time cards show when every one is due at each station. In case a following train having the right of way is for any reason delayed, a special order is given to it changing the schedule time for that run; all other trains to be affected by it are advised of such change and the general rules for preventing collision are applied to the time fixed by the special order.

On the night in question the freight left Sidney at 11:46, thirteen minutes before the passenger was due. The time allowed by schedule for its run to Homer was fifteen minutes. The passenger passed Sidney at four minutes past twelve, being five minutes late. Its schedule time for the run to Homer was nine minutes.

It thus appears that had the freight made the run, as it probably did, in the time allowed, it would have reached

Homer at one minute past twelve, and had the passenger been on time at Sidney and made the run to Homer in the time allowed, it would have passed that station seven minutes later, leaving to the freight time enough to clear the main track fully five minutes before the passenger was due, as required by the rule. But it happened that the side track at Homer was found to be occupied by the first section of the freight. It then became the plain duty of the second section to show the red lights on the caboose and send back the flagman with torpedoes and signals to stop the passenger.

How far that duty was performed or neglected, was not clearly shown. It seems that plaintiff was obliged to rely for proof on the testimony of defendant's employes. Neither of the train hands on the second section was called as a witness. But the testimony of the train master had some tendency to prove that those lights had been properly displayed. One of the lanterns was found in the ditch about five feet from the track. He saw it immediately after one of the men picked it up, and carefully examined it. It was but slightly battered, though the caboose had been torn to pieces. He says he knows the right position of the red in the socket and it was in that position. The conductor of the passenger, who was in the baggage car at the time of the collision and was stunned, got back to the rear of his train as soon as he could—in four or five minutes—and shortly afterward saw the conductor of the second section coming from the west back to the wreck, and says that he had been out to flag the passenger. Perhaps it was because of this testimony of the train master and the conductor of the passenger, that the train hands of the second section were not called.

If they performed their duty as prescribed by rule 99, the collision must be attributed, according to the evidence, to the fault of the deceased. From the testimony of his fireman and conductor, it would appear that he did not whistle for Homer, nor take any measure to slacken his speed until within a few seconds of the collision, but was going at the

rate of thirty to forty-five miles an hour when it occurred; and this, in the face of warning signals visible for two miles.

The declaration contained seven counts. They charge a negligent disregard by defendant of several duties stated by counsel as follows : First, to hold the second section of 92 at Sidney, until 42 passed in safety; second, to designate a place where the second section of 92 should go upon the side track and allow 42 to pass; third, to stop 42 at Sidney and apprise the men in charge of it of the danger.

As to the first, we have seen that 92 had the start of 42 of thirteen minutes in a run of six and one-tenth miles and that the difference of time between the two trains in making it was only six, so that at Homer 92 would still be seven minutes in advance. Why, then, in any view, should it have been held at Sidney until 42 passed, unless it was known that the first section was occupying the side track at Homer, of which there was no evidence. Homer was not a telegraph station.

And the same conditions made it equally unnecessary for the company, through its train master, to designate a place where the second section should go upon the side track to allow 42 to pass, or to stop 42 at Sidney. A simple application of the general rules to known facts would indicate to those in charge of these trains their respective duties, and in such cases as this it must be left to their intelligence and responsibility to make the application. The conductor and engineer of 92 at Sidney knew when 42 was due there, the distance to Homer, the time allowed to make the run, the condition of their own train and the character of the track. If with this knowledge their judgment was that they had ample time in which to make the run and be on the side track at Homer at least five minutes before 42 would be due there, they could properly go on; but if there was any reason to doubt it, their plain duty was to remain on the side track at Sidney until 42 passed. The rule for them is in cases at all doubtful to be on the safe side. If the conductor and engineer of 42 found the main track clear at Sidney they

could properly go on, but it was as certainly the duty of the
engineer to be looking out for signals of danger from pre-
ceding trains, to whistle for Homer, to slacken speed and run
carefully as he approached it and until he knew the track
was clear. A proper observance of these general rules would
prevent accidents as far as seems possible, or at least practi-
cable. No special order was required for either train. The
train master, with twenty years of experience in that depart-
ment and familiar with the methods and rules adopted on all
the great trunk roads for moving their trains, testified that
it is impracticable for the company or the train master to
give special orders in such case, and if practicable it would
be unwise to do so. This was matter of opinion or judg-
ment. We think he was competent, as an expert, to state
his opinion. But he also stated the facts upon which it was
based, and if his opinion, which was objected to, had been
excluded, we can not see that it would or should have
changed the result. The court was enabled to determine
from the facts he testified to, whether the failure of ap-
pellee to issue a special order to side track 92 at Sidney,
or designate a place for the passing of 42, or stop it at Sid-
ney and apprise the persons in charge of the supposed
danger, was or was not evidence of negligence on its
part. It seems unnecessary to repeat his statements here.
We concur in the view of them taken by the court be-
low. In I. C. R. R. Co. v. Neer, 31 Ill. App. 134–5,
we said: "Whether the system of appellant was consist-
ent with due care was a question for the jury. But it
was to be determined upon the evidence, in reference to
which, on the former appeal, we said that 'whether this
reasoning and these opinions should be adopted or not, there
is in this record really no conflict in the evidence as to the
propriety of the rule; and if the practice of the appellant is
to be condemned, it must be upon a conclusion reached in-
dependent of and discarding the opinions of these expert wit-
nesses. We think that neither the court nor jury has such
knowledge of the subject-matter as to justify such a conclu-
sion.'" 26 Ill. App. 356. So here, the evidence shows that

the system in question was adopted long before this accident occurred, and was intended to apply to such a case; that " these rules are in force on other roads; that they were formulated by what is called the general time convention, an association of general superintendents of leading trunk lines, were the outcome of several years' discussion, and have been more effective to prevent accidents than any other rules that were ever in existence." There was no contradiction of any statement of the train master, whether of fact or opinion, and so any finding to the contrary must have been arbibrary, unreasonable and without evidence.

The sixth count avers that the defendant committed the movement and running of 92 to one Snape, who, by direction of defendant, had authority to command its movements and control the persons employed thereon; that by virtue of such authority he represented the defendant and was vice-principal with respect to its movements; that acting under such authority in place and stead of defendant, he negligently obstructed the track, etc.

The train master positively denied that Snape had such authority, and stated that the conductor and the engineer controlled the movements of the train; that it is not the duty of the engineer to obey the signal of the conductor unless the time card gives him the right to go, so that responsibility in case of trouble, rests equally on both; that it was the duty of both to fix meeting and passing points, and no one on the train can authorize it to go further or shorter on the time of a superior train. And on that point also he was wholly uncontradicted.

It thus appears to us that there was no evidence on which the jury could, with any show of reason, find the defendant guilty, directly or through any person authorized to represent it, of culpable negligence. Bartelott v. International Bank, 119 Ill. 259. If, then, the deceased was in the exercise of ordinary care, and the collision was due to the fault of the train men on 92, the injury was caused by negligence of his fellow-servants. O. & M. Ry. Co. v. Robb, 36 Ill. App. 627.

Several passenger engineers were introduced to prove that

their personal association with conductors of freight trains is slight, but they all testified to a general and perfect understanding of the perils they encounter in the negligence of those running freight trains. Hence, whether Snape or his engineer were or were not fellow-servants of the deceased, according to the test furnished by the Moranda case, 93 Ill. 302, the negligence of the employes on such trains was one of the dangers ordinarily and necessarily incident to the service in which he was engaged; and it can not be claimed that he lost his life through anything that appellee did to render the service more dangerous than it was known to him to be before he engaged in it. For that reason there could be no rightful recovery in this case. Clark v. C., B. & Q. R. R. Co., 92 Ill. 42, and cases there cited.

Finally, there was no attempt to prove, distinctly, that the deceased was in the exercise of ordinary care for his own safety. It might be, however, and generally is, where it is a fact, sufficiently indicated by the circumstances. Here it was not so indicated. He ran into the freight train only a short distance west of the west switch, at full and high speed, when ordinary prudence and the positive command of the master required that he should be running there at a slackened speed and with special care. This was an essential element of appellant's case, and for a total failure of proof tending to show it, whatever it might be on other points, the jury would be properly directed to return a verdict for the defendant. We find no material error in the record. The judgment will therefore be affirmed.