# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FOURTH DISTRICT—FEBRUARY TERM, 1895.

## Terre Haute & Ind. R. R. Co. v. Ella M. Leeper, Administratrix of William Leeper.

1. NEGLIGENCE—*Presumptions as to.*—The law is that no presumption of negligence arises merely from the fact of an injury. The fact that extra trains are run five minutes apart does not warrant the inference of negligence.

2. PERSONAL INJURIES—*Perils of the Service.*—Where a person is not injured by any cause outside of the ordinary perils of the service in which he is engaged, he can not recover.

3. FELLOW-SERVANTS—*Crews of Extra Trains.*—Employes of a railroad company operating different sections of a freight train following each other upon the same track, are fellow-servants.

4. SAME—*Who Are—The General Rule.*—Servants of the same master are fellow-servants, if their duties are such as to bring about personal association, or if they are actually operating at the time of the injury in a particular business in the same general line of employment, so that owing to such relation they are put to constant care not to injure each other.

**Trespass on the Case.**—Death from negligent act. Appeal from the City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding. Heard in this court at the February term, 1895. Reversed. Opinion filed July 1, 1895.

THOS. J. GOLDEN and TURNER & HOLDER, attorneys for appellant, contended that servants of the same master are fellow-servants under either of the following conditions, viz:

(194)

T. H. & I. R. R. Co. v. Leeper.

1. When, at the time of the injury, the servant who received the injury and the servant who caused it are directly co-operating with each other in the particular business in hand.

2. When their usual duties are such that they are brought into habitual consociation, so that they may exercise an influence upon each other's promotion of proper caution. Abend v. T. H. & I. R. R. Co., 111 Ill. 202; Rolling Mill Co. v. Johnson, 114 Ill. 57; Chicago & N. W. Ry. Co. v. Snyder, 117 Ill. 376; Wenona Coal Co. v. Holmquist, 152 Ill. 581.

" In this State the definition of the relation which makes two servants of the same master fellow-servants, is law for the court to declare; whether two servants come within the definition, is a fact for the jury to find." Chicago & N. W. Ry. Co. v. Tuite, 44 Ill. App. 541.

The negligence of fellow-servants is one of the ordinary perils of the service which one takes the hazards of in entering into any employment. Bailey's Master's Liability for Injury to Servants, 316; Patterson's Railway Accident Law, 344; 2 Rorer on Railroads, 831; Slater v. Jewett, 85 N. Y. 61; McCosker v. L. I. R. R., 84 N. Y. 71; Randall v. B. & O. R. R., 109 U. S. 478; Ohio & M. Ry. Co. v. Robb, 36 Ill. App. 627; Clark v. W. R. R. Co., 52 Ill. App. 111; O'Leary v. W. R. R. Co., 52 Ill. App. 641; Chicago & A. R. R. Co. v. Murphy, 53 Ill. 336; Chicago & E. Ill. R. R. Co. v. Geary, 110 Ill. 383; Stafford v. C., B. & Q. R. R. Co., 114 Ill. 244; Bailey on Master's Liability for Injury to Servants, 171.

As between master and servant no presumption of negligence arises on the part of the master from the mere fact that the servant has been injured while in his employ. Clark v. Wabash R. R. Co., 52 Ill. App. 111; Illinois C. R. R. Co. v. Houck, 72 Ill. 287; East St. Louis Packing Co. v. Hightower, 92 Ill. 139; Sack v. Dolese, 137 Ill. 139; Joliet Steel Co. v. Shields, 146 Ill. 607; Baltimore Elevator v. Neal, 65 Md. 438; Kuhns v. Railway Co., 70 Iowa 561.

WISE & McNULTY, of counsel.

JESSE M. FREELS, attorney for appellee, contended that the question as to whether the deceased and the servants of the defendant in charge of the train that caused the injury were fellow-servants, was a question of fact, to be determined by the jury from the evidence in the case, under the instructions of the court. Lake Erie & W. R. Co. v. Middleton, 142 Ill. 556; Chicago & N. W. Ry. Co. v. Moranda, 108 Ill. 581; Chicago & A. R. Co. v. Kelly, 127 Ill. 642; Indianapolis & St. L. Co. v. Morgenstern, 106 Ill. 220; Mississippi & O. R. Co. v. Massey, 152 Ill. 144; Pullman Palace Car Co. v. Laac, 143 Ill. 242; Chicago & E. I. R. Co. v. Kneirim, 152 Ill. 459; Lake Erie & St. L. R. Co. v. Hawthorn, 147 Ill. 230.

They were not fellow-servants. They had no connection one with the other, were not working together, were not associated together in the performance of their duties; their employment did not require co-operation, and had not brought them together, or into such relations that they could exercise an influence upon each other promotive of proper caution, and without which they were not fellow-servants, within the rule which exempts the master from liability for injury to one through the negligence of the other. Lake Erie & St. L. R. Co. v. Hawthorn, 147 Ill. 230; Chicago & N. W. R. Co. v. Moranda, 93 Ill. 315; Chicago & A. R. Co. v. Kelly, 127 Ill. 643; Chicago & A. R. Co. v. Hoyt, 122 Ill. 374; Chicago & N. W. R. Co. v. Moranda, 108 Ill. 582; Mississippi & O. R. Co. v. Massey, 152 Ill. 144.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

The appellee recovered a judgment for $3,000 damages on account of the death of her intestate, occasioned, as alleged, by the negligence of appellant.

The declaration alleges that on the 25th day of February, 1893, the deceased, William Leeper, a minor, seventeen years of age, was in the service of the defendant as a fireman on the locomotive engine of one of its said trains, and while his said engine and train were standing on the side track of defendant, at Montrose, about eight o'clock in the evening

of said day, and while the said William Leeper was in the discharge of his duty as such fireman on its said engine, with due and ordinary care for his personal safety, and to prevent injury, the defendant, not regarding its said duty in this behalf, wrongfully and negligently ran and drove an engine and train with great force and violence into and against the rear end of the train attached to the said engine on which the said William Leeper was then and there at work, as aforesaid, where it was his duty to be, and the defendant thereby, then and there wrongfully and negligently drove the cars of said train against and upon said engine on which said William Leeper was then and there at work, and the defendant then and there wrongfully and negligently drove and pushed said engine into the caboose of a train in front of it on said side track, and then and there mashed said caboose into splinters, and broke and mashed said engine, and the said William Leeper was thereby and in consequence of the premises aforesaid, then and there caught and crushed in the wreck, and then and there so mangled and crippled that he died about four days thereafter, from the injuries then and there received, as aforesaid. And plaintiff avers that the servants of defendant in charge of said train which caused said injuries, as aforesaid, were not the fellow-servants of the said William Leeper, deceased.

The evidence shows that appellant was running, westward bound, a freight train, in three sections, as train No. 29. William Leeper was a locomotive fireman on the second section. The sections were called 29, 29 extra, and 29 second extra, respectively. They were run on the schedule time of regular train No. 29. Each was provided with a train crew of conductor, two brakemen, an engineer and fireman. Each crew received the same orders, issued by the train dispatcher. These sections ran five minutes apart out on the road, but were allowed, under the rules, to close up nearer at meeting points. At Greenup, a station twelve miles east of Montrose, the crew of each section received orders to run to Montrose, regardless of 34. Under the rules this order meant to run to Montrose and go on the side track so as to

allow No. 34, which was an east-bound freight train, to pass. The first section ran to Montrose, and going on the side track, pulled up to the west end of same, leaving the switch at end open, so as to allow the second section to follow. The second section did follow on the side track, and stopped with the engine within fifteen or twenty feet of the caboose, which was the rear car of first section. The east end switch and signals were placed so as to allow the third section to follow in on the side track. Some of the crew of the second section got off of the front part thereof and went forward into the caboose of the first section to get water. The deceased, William Leeper, remained in the cab of his engine. The third section came on, and ran into the switch onto the side track, but came with too much speed to be stopped before the engine collided with the rear end of the second section. The switch lights, and the lights on the rear end of the caboose of the second section, indicated the position of the train. There was nothing on the track for two miles east of Montrose, to obstruct the view of the crew in charge of the third section. The engine of the third section struck the caboose at the rear end of the second section with sufficient force to shove the whole of that section forward, so as to push the engine of the second section into the caboose of the first section with force enough to break the platform thereof. The shock drove the front end of the tender up against the cab of the locomotive. William Leeper, who was evidently trying to get out of the cab, was caught between the tender and the moulding on the cab, and sustained injuries to one of his limbs, about the knee, and was otherwise crushed and bruised about the hips, so that he died in a few days after the accident. He was a few months over eighteen years of age at the time of his death. He had been at work for appellant nearly two years, over one year of which time he had been firing an engine in the yards. Had been used as an extra on the road for a couple of months.

There is no conflict in the evidence relating to the substantial facts. The collision was directly caused by the neg-

ligence of the engineer of the last section—29, second extra. That section was several miles east of Montrose when the second section had run on the switch at Montrose, and the view was clear, with all signals properly set, so that the lights could be readily seen for a long distance. In addition to these facts, the engineer and conductors of each section, at the station twelve miles east of Montrose, had received orders to pass No. 34 at Montrose. Each crew knew they were running on the time of regular No. 29, and that they would close up at Montrose, so as to pass No. 34. The appellee claims the declaration proceeds on two theories: 1st, that it was negligence on the part of appellant to run those trains only five minutes apart; 2d, that the fireman did not know the crew of the train following him, had no control over them, was in no position to learn their character as to care, or to exercise any influence on them; in short, that he was not a fellow-servant with them.

The undisputed facts raise the question of legal liability. The law is, that no presumption of negligence arises merely from the fact of the injury. Joliet Steel Co. v. Shields, 146 Ill. 607. There is no proof in this record that the operation of these trains or sections of trains, five minutes apart, with orders to pass No. 34 at Montrose, was unusual, improper or dangerous. The facts do not warrant the inference of negligence on account of that system. It is a matter of every-day experience that more than one train run on switches at stations for another train to pass.

The legal question then is, whether, under the facts in this case, the accident, so arising, was one of the hazards of the service. In the case of Clark v. C., B. &. Q. R. R. Co., 92 Ill. 43, the plaintiff, a locomotive engineer, was injured in a collision by the fault of the conductor of the other train, operated by a lessee of the road. The court say : " Defendant had adopted rules and regulations as to the operation of trains, which, had they been observed strictly, would have avoided the injury to the plaintiff. More than that it could not do. * * * Experience teaches that in no service do the employes always observe due care. In

railroad, as well as in other hazardous labor, any cautious person can not but anticipate that there may be omissions of duty on the part of employes that might expose co-employes to injuries. Such are among the ordinary exposures, and if a party is unwilling to assume such risks, he must not engage in the service. It is a matter of no consequence whether plaintiff was in a common employment with the servant of the lessee company, whose negligence or willfulness caused the injury. Plaintiff was not injured by any cause outside of the ordinary perils of the service in which he was engaged."

In the cases of O. & M. Ry. Co. v. Robb, 36 Ill. App. 627, and Clark v. Wabash R. R. Co., 52 Ill. App. 104, it was held, those operating different engines on the same road are fellow-servants, and in case of injury by collision, caused by the negligence of either crew, there can be no recovery. See also O'Leary v. Wabash Co., 52 Ill. App. 641. This holding is understood to be in accord with the rule laid down in the Moranda case, 93 Ill. 317, which is taken to be, first, that servants of the same master are fellow-servants, if their duties are such as to bring about personal association; second, if they are actually co-operating at the time of the injury in a particular business, in the same general line of employment, so that owing to such relation, they are put to constant care not to injure each other. C. & E. I. R. R. Co. v. Kneirim, 152 Ill. p. 466–7, and cases there cited. To bring servants within the operation of this rule, as applied to railroads, it is not understood they must necessarily be jointly operating the same train. Though operating different trains, they are put to constant care not to bring about collisions. They are constantly on their guard to avoid collisions. It is a part of their duty to so be on guard, just as much so, as it is that of two men pounding the same piece of iron on the same anvil, not to hit each other. This duty applies not merely to the engineer or conductor of the train, but to the crew operating the train, as a class or an entity. Each member of the crew is assigned to a separate duty, but the duty of each relates to a joint enterprise, in the proper execution of which each is equally interested. For this reason there

is no imputable negligence as between the servants, and no liability on the part of the master if he has exercised reasonable care in employing reasonably prudent and competent servants, though in fact one of the servants of such train is injured by the negligence of another servant of the same train. They are all engaged in a joint enterprise, identified with it, and are, so to speak, an entity, or one person, in relation thereto, and such person can not have an action for injuring himself by his own negligence. Each railroad crew so considered, operating trains, is engaged, in its relations with other crews operating trains, on the same line of road, in a particular business in the same line of employment, requiring constant care to avoid collisions, and therefore the relation between such crews is promotive of caution not to injure each other. It is difficult to find a legal principle upon which a legal liability might be founded, where there is no negligence on the part of the master, or of one standing in that relation to the servant. In this case the master furnished proper machinery, properly equipped, employed competent men to operate it, under a system reasonably safe. What more could be required? There is no question in this case of the negligence of a vice principal, to determine which relation is often so perplexing. The injury was solely caused by the negligence of a servant operating a train in direct violation of the orders of the master, being one of the hazards of the service in which appellee's intestate was engaged. In principle, this case falls within that of Clark v. C., B. & Q. R. R. Co., 92 Ill. 43, *supra*. Under this view of the law, as applied to the facts, it would be useless to remand the case. The judgment is therefore reversed without remanding.