## Chicago City Ry. Co. v. Thomas Leach.

1. FELLOW-SERVANTS—*How Relation is Created.*—To create the relation of fellow-servants, it is essential that at the time of the injury they shall be directly co-operating in the particular business in hand, or that their usual duties shall bring them into habitual consociation, so that they may exercise an influence upon each other promotive of proper caution.

2. SAME—*Question of Law and Fact.*—The definition of fellow-servant is a question of law, in regard to which the jury must be instructed with substantial accuracy; but it is always a question of fact, to be determined by the jury from the evidence, whether or not the particular case falls within the definition.

3. VERDICTS—*Where They Will Not be Disturbed.*—Where the evidence, with all its legitimate inferences. makes a case upon which reasonably prudent men might honestly differ, and the jury has decided the question of fact either way, an appellate court can not disturb the finding, though it may not justify the conclusion.

4. ORDINARY CARE—*A Question of Fact.*—The question, under the evidence, as to whether or not the plaintiff at the time of the injury was in the exercise of ordinary care for his personal safety, is a question of fact, for the jury.

5. ASSUMED RISKS—*What Risks Are.*—An employe does not assume all the risks incident to his employment; but such as are ordinary and usual he does assume. "Usual" is that which is common, frequent, customary; "ordinary" is that which is often recurring.

Chicago City Ry. Co. v. Leach.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed October 27, 1902.

This case went to the jury upon two counts of the declaration: The first original count, which charged that Golden, the gripman of the train following appellee's train, was guilty of negligence, but does not allege that Golden was not a fellow-servant of appellee, the particular negligence being that " the defendant, by its certain other servants," negligently drove a certain other train of cars at so high and dangerous rate of speed that it could not be stopped, etc.; and the first additional count, which alleged that Golden was guilty of negligence, and was not a fellow-servant of appellee, and that he wantonly drove his train so that it ran into appellee's train, etc.

Appellee was in the employ of appellant, the street car company, as a conductor, and had been so employed for more than a year, next prior to the date of his injuries. That day he took his train at the barns near Thirty-ninth street, and came north on Cottage Grove avenue to Twenty-second street, then north on Wabash avenue to Madison street, then east to Michigan avenue, then north to Randolph street, and then west to Wabash avenue, into which the track turns and runs south. The distance between the outside lines of the west curb of Michigan avenue, and the east curb of Wabash avenue is 407 feet. Appellee's train consisted of a grip car and two passenger cars; in length over all about seventy feet. It stopped as it was about entering the Wabash avenue curve, the head of the grip just clearing the east sidewalk of Wabash avenue. This left to the rear of his train over 325 feet of clear straight track, along which his train could be easily seen by the gripman having in charge the train next following. It was eight o'clock in the morning of September 27, 1893. The sun was shining. When his train had gotten three or four blocks from the barns appellee noticed that there was too much play between the draw-bars of his car and the grip, which caused

a bumping. When his train stopped on Randolph street near Wabash avenue, he got down between the cars to tighten up these draw-bars. While thus engaged, without warning, the train next following, of which Golden was the gripman, crashed into appellee's train, driving it from twenty to seventy feet, and causing him to be dragged under his train for that distance, thus inflicting upon him the injuries of which he complains.

W. J. Hynes, S. S. Page and H. H. Martin, attorneys for appellant.

Wing & Chadbourne and James C. McShane, attorneys for appellee.

Mr. Presiding Justice Ball delivered the opinion of the court.

It is said that even if the negligence of Golden caused the collision, appellant is not liable, because Golden and appellee were fellow-servants. Such is the law in this state. If, however, Golden was not the fellow-servant of appellee, and the latter, while in the exercise of due care, was injured by the negligence of the former, then the common master is liable. Libby v. Scherman, 146 Ill. 552. It is evident the jury found that appellee and Golden were not fellow-servants. To create the relation of fellow-servants it is essential that at the time of the injury they shall be directly co-operating in the particular business on hand; or that their usual duties shall bring them into habitual consociation, so that they may exercise an influence upon each other promotive of proper caution. C. & N. W. Ry. Co. v. Moranda, 108 Ill. 576, 582; C. & A. R. R. Co. v. Swan, 176 Ill. 424.

The definition of fellow-servant is a question of law, in regard to which the jury must be instructed with substantial accuracy; but it is always a question of fact, to be determined by the jury from the evidence, whether or not the particular case falls within the definition. I. & St. Louis Ry. Co. v. Morgenstern, 106 Ill. 216, 220; L. E. & W. Ry. Co. v. Middleton, 142 Ill. 550, 556.

Appellant was operating a double track street railroad, the north and south termini of which were seven or eight miles apart. Upon these tracks it was running trains of two or three cars. Each train had its gripman, and, if composed of two cars only, one conductor; if of three cars, two conductors. These trains ran with great frequency all day, and to a more limited degree during the night. At the time appellee was injured, appellant had in its employ over 500 conductors and gripmen. Appellee never knew Golden, and never to his knowledge ran with him on the same train. These two men were working under the same superintendent, and in the same department; but these things and others of like nature, in themselves, do not create the relation of fellow-servants. C. & A. Ry. Co. v. O'Brien, 155 Ill. 635.

The evidence sufficiently supports the finding that these two men were not so directly co-operating, nor were they so habitually associated as to make them fellow-servants. Rolling Mill v. Johnson, 114 Ill. 57; C. & A. Ry. Co. v. House, 172 Ill. 601; World's C. Ex. v. Lehigh, 196 Ill. 612.

Where the evidence, with all its legitimate inferences, makes a case upon which reasonably prudent men might honestly differ, and where, on that evidence, we are not compelled to hold as matter of law that they were fellow-servants, and the jury has decided the question of fact either way, we can not disturb the finding, though we may not justify the conclusion. C. & W. I. Ry. Co. v. Flynn, 154 Ill. 449.

Even if, upon the facts, there be some doubt (the writer has none) whether or not Golden and appellee were fellow-servants, two juries have found with appellee upon that question, and nothing short of a decision by the Supreme Court will put it at rest.

The evidence tends strongly to prove that this accident was due to the negligence of Golden, the gripman of the train which ran into appellee's train. Had he looked—and it was negligence for him not to look—he would have seen the train standing in front of him, upon the track on

which he was running, when he was over 300 feet from it. It then became his duty to stop until that train started, or to approach it at such a speed that he could stop his train before he reached it. Instead of so doing he continued at his usual speed and made no attempt to stop his train until about the time he struck the standing train. The shock of the impact was so great that the standing train, with its brakes set, was pushed from twenty to seventy feet. There is evidence tending to prove that Golden in running that 300 feet did not look ahead, but was gazing toward the north sidewalk of Randolph street. It is inherent in the verdict that the jury found this accident was caused by the negligence of Golden; and after a careful considera- tion of the evidence we agree with them in that conclusion.

Appellee boarded his train the morning of the accident after it had been made up and while it was coming out of the barn to the main track. The slack coupling was not discovered until after the train had gone several blocks. It was undoubtedly the duty of appellee to take up that slack. He did not do this upon the trip to the north, where the speed of the rope was at least eight miles per hour, but waited until he had reached the loop, where the speed of the rope was but from four to five miles per hour. Then, with 300 feet of clear track behind him, after looking back, he sat down between the cars, as he had to do, to remedy that defect. He was not called upon to presume that the gripman in charge of the next following train would come into Randolph street and not see the standing train in front of him the moment he rounded the curve. The testimony of one witness that a train going not to exceed five miles an hour would run twenty-five or thirty feet after the rope was dropped, and the brake put on, and then would slide 140 feet with wheels locked, after which it would crash into another train of three cars with sufficient force to drive that train around the Wabash avenue curve, passes the grounds of credulity and enters upon the domain of imagination. Appellee had the right to suppose that Golden would not violate the rules of the

master, and by *crass* negligence imperil his life and destroy his usefulness.

If it was the duty of appellee to see to the coupling of his cars before the train left the barn, and he neglected that duty, such neglect was not the proximate cause of his injury, and is therefore no bar to his recovery.

At all events the question, under the evidence, as to whether or not the appellee at the time of injury was in the exercise of reasonable care for his personal safety, was a question of fact, which the jury resolved in his favor; and to that extent, at least, we commend their finding.

It is said that, even if appellee and Golden were not fellow-servants, and the accident was due to the negligence of Golden, the injury to appellee was occasioned by an ordinary peril of his employment, and therefore appellee can not recover.

An employe does not assume all the risks incident to his employment; but such as are ordinary and usual he does assume. "Usual" is that which is common, frequent, customary; "ordinary" is that which is often recurring. Can it be said that the dashing of one train into another upon a clear day, upon a straight track, was an "ordinary" or "usual" danger, which appellee assumed when he accepted employment with appellant? The jury have said that it is not, and we agree with that finding.

Appellant complains of the first instruction given for appellee. It is sufficient to say that this instruction, in substance, is approved in C. & A. Ry. Co. v. O'Brien, 53 Ill. App. 198, affirmed in 155 Ill. 630, 634; and, in our opinion, it is in accord with the decision of the Supreme Court in the Moranda case (93 Ill. 302), and with the later decisions of that court upon the relation of fellow-servants.

It is true that the instruction is abstract, but it is a correct statement of the law upon a question of fact then before the jury for their determination.

Complaint is made of the refusal to give appellant's forty-eighth instruction, that the burden of proof was on appellee to show that he and Golden were not fellow-serv-

ants. The vital point of this instruction is found in instruction No. 46, which was given, and thus the error, if it be an error, was cured.

The modification of appellant's forty-sixth instruction was proper.

The court gave, at the request of appellant, forty-one instructions. Complaint is made that the learned trial judge was guilty of reversible error in refusing to give six other instructions tendered by appellant. As appellant's counsel have not thought it necessary to point out the error in these several refusals, we are not called upon to sift these instructions for that purpose.

When Golden's train struck the train of the appellee the latter was sitting down "on his hams," between the trailer and the first car, engaged in tightening the draw bar. The impact of the train drove the first train forward from twenty to seventy feet. For that distance appellee was dragged under his train. His back was broken; that is, the dorsal vertebra is displaced backward about one-half inch, causing almost total paralysis from the knees downward, and partial paralysis from the knees to the hips, accompanied by great wasting of the muscles from the waist downward, and by paralysis of the bladder. Three of his ribs were broken and his left collar-bone was dislocated. Eight years after the accident he was unable to walk, except with the aid of crutches. He was in worse condition April, 1901, than he was in November, 1896. It seems that his disability is permanent, and that he will never be able to do any manual labor. At the time he was hurt he was forty years of age, a sound, healthy man. He was then earning $80 to $90 per month.

If he is entitled to anything, appellee is entitled to compensation. From full health at the age of forty years, a self-supporting, active man is in an instant changed into a physical wreck. Hope is gone, and the delights of life are forever banished. It is not for us to say just how much or just how little money will compensate one for such suffering and for such deprivation. This duty devolved upon the

jury, and they have performed it. Under all the facts, as to the extent of the injuries of appellee, we can not say that they erred as to the amount of damages.

We do not find reversible error in the language used by the counsel of appellee in his argument to the jury. The court was justified in overruling the challenge for cause to Juror Hanshaw.

In the ruling of the learned trial judge on points of evidence we find no reversible error. The judgment of the Superior Court will be affirmed.