112    225
r214s 579

## Wabash Railroad Company v. Peter H. Bhymer.

### Gen. No. 10,923.

1. STATUTE OF LIMITATIONS—*when demurrer to a plea of, is properly sustained.* Where additional counts have been filed to a declaration in an action on the case for personal injuries and a plea of the Statute of Limitations has been filed to such additional counts, a demurrer to such plea is properly sustained where such additional counts merely contain a restatement of the cause of action previously declared on.

2. FELLOW-SERVANTS—*who are not.* Men working upon a train ahead of the one upon which the plaintiff was employed, are not as a matter of law fellow-servants of the plaintiff where it does not appear that such men and the plaintiff were through their usual duties habitually brought into consociation with each other.

3. ASSUMED RISK—*what is not.* An employee does not assume all the risks incident to his employment, but such as are ordinary and usual he does assume; usual, is that which is common, frequent and customary; ordinary, is that which is often recurring; and the dashing of one train into another upon a clear day on a straight track is not an ordinary or usual danger assumed by the employee.

4. INSTRUCTION—*when refusal of, though erroneous, will not reverse.* The refusal of a correct instruction does not constitute reversible error where it appears from the answer of the jury to a special interrogatory that they based their verdict upon a view of the case which made it manifest that the refusal of such instruction did not affect the issue.

5. INSTRUCTION—*must limit jury to evidence.* An instruction must refer or limit the jury to the evidence.

6. NEGLIGENCE—*when instruction upon, is bad.* An instruction which tells the jury that a failure to heed certain signals constitutes negligence, is bad.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1902. Affirmed. Opinion filed February 13, 1904.

**Statement by the Court.** This is an appeal from a judgment awarding damages for personal injuries received by appellee in consequence of the derailing of one of appellant's trains on which he was employed as a fireman. The derailing took place at a spot where the track had been torn up by an accident to another of appellant's trains immediately ahead of the one on which appellee was riding.

Early on the morning of December 9, 1889, a freight train, known as No. 3-64, north bound, left Marley, a station on appellant's road, from twelve to fifteen minutes ahead of another freight train going in the same direction, known as No. 94. Before leaving Marley a hot box was discovered on No. 3-64, about nine cars forward of the caboose. The box was cooled off and repacked and a bag filled with water placed upon it so as to have a continual-drip of water upon the journal. This was the usual method for treating a hot box. After the engineer had been given the " go ahead " signal at Orland, a station about seven miles north of Marley, the box was again found to be hot. Immediately, the conductor and rear brakeman began signaling the engineer to stop, by swinging their lanterns from the sides of the caboose, and continued doing so until the train came within about a mile of Worth, a station some five and one-half miles from Orland, at which point one of the train crew observed the signals and informed the engineer. It was his duty to be on the lookout for signals, and there is evidence tending to show that he did not look. When informed of the signals he put on brakes at once, but before reaching Worth the heat caused the journal to twist off and drop to the ground, wrecking the rear cars and tearing up the track. The caboose was turned over and the lights ex-

Wabash R. R. Co. v. Bhymer.

tinguished.   The train had been running about sixty miles an hour at that time.   In the meantime train 94 was following, having orders to pass train 3–64 at Worth.   It was drawn by two engines, appellee being fireman on the second, and was behind time " about twenty-five minutes."   It consisted of eighteen cars of cattle, a car of cottonseed oil and nine cars of merchandise, and was a " second class train," coming " next to a passenger."   No. 3–64 was carrying coal and of the third class.   After the wreck the conductor of 3–64 hurried back toward No. 94 taking a torpedo with him and placed it on the track about a mile south of the wreck, and then signaled with a lantern to the oncoming train to stop.   The rear brakeman of No. 3–64 testified that there were fuses in the caboose which should have been lighted and thrown out for the purpose of warning No. 94 of danger, but it was not done.   A fuse is an extra danger signal.   It makes a " pretty good red light for ten minutes and can be seen at least a mile."   As the train reached him, the conductor, who was waiting for it, threw his lantern at the cab of the front engine, but the lantern passed over it and lodged on the second engine where it was afterwards found.   The view of the fireman on the first engine was somewhat obstructed by the head brakeman who sat in the seat box on the engine instead of being out on the train as he should have been.   As soon as the men in charge of the two engines heard the torpedo explode (they did not notice the other signals) they applied the brakes and exerted themselves to stop the train, which was running down grade at a speed of sixty miles an hour.   It ran for about a mile further into the broken track, and was there wrecked and appellee injured.

The original declaration filed September 21, 1900, consists of one count and charges appellant with negligence in causing and permitting its track and certain rails to become and remain loosened and displaced, of which it had notice, by reason whereof, etc.   November 30, 1901, being within two years after the accident, two additional counts were filed.   The first charges a duty to warn appellee of

the displacement of the rails and negligence in failing to give such warning. The second charges a duty to keep the track in safe condition and that appellant " negligently caused, suffered and permitted a certain other locomotive and train of cars to become and remain wrecked upon said track and thereby detached, loosened and displaced a certain rail or rails from the ties there," by reason whereof the locomotive on which appellee was riding " left the track at the point where said rail or rails had been detached," etc. At the trial, which took place more than two years after the happening of the injury, two more counts were filed, styled the third and fourth additional. In the third it is alleged that appellant so negligently operated another freight train as to permit and cause the same to be wrecked, and thereby loosened and displaced certain rails, because whereof, etc. The fourth count avers the train preceding appellee's " was so conducted and operated that it became necessary then and there to stop the same, and certain agents of defendant upon said train thereupon immediately endeavored by the giving of signals to stop said train, which signals were not obeyed and said train failed to stop " and that appellant negligently failed to warn appellee that said train " must be stopped; " that in consequence of appellant's servants failing properly to stop said train it became wrecked and the rails torn up and displaced, and by reason of the failure to give said signals, appellee was suffered to be carried upon the place where said rails were displaced, whereby his locomotive left the track and he was injured.

To the last two counts appellant pleaded the Statute of Limitations, a demurrer to which plea was sustained. Appellant standing by its plea, the court ordered the general issue to stand as to all the counts.

It was admitted at the trial that the track was in sound condition at the place of the wreck before the first accident, that there was " a good roadbed, good track and good rails." When the plaintiff rested and again at the close of all the evidence, a motion of defendant to instruct the jury to find it not guilty was each time refused.

In answer to special interrogatories propounded by appellant, the jury found it was negligent; that its negligence consisted " by running train with a hot box at the highest speed and in disregarding signals and in failure to use signals at hand; " that the negligent employees of appellant were the " engineer, brakeman and conductor," and that they were not fellow-servants of appellee.

A general verdict was returned finding appellant guilty and assessing damages at $8,000, upon which after a motion for a new trial had been overruled, judgment was entered.

C. N. TRAVOUS, for appellant.

SETH F. CREWS and RALPH CREWS, for appellee.

MR. JUSTICE STEIN delivered the opinion of the court.

*First.* The correctness of the court's ruling in sustaining the demurrer to the plea of the Statute of Limitations to the third and fourth additional counts depends upon whether the counts introduced a new cause of action or were merely a restatement of the cause of action previously declared on. If the former, the demurrer should have been overruled; if the latter, it was properly sustained. C. C. Ry. Co. v. Leach, 182 Ill. 364.

The argument is that by these counts appellee for the first time charges negligence in the operation of the first train. If this be so, the action of the court was wrong. But in our opinion the second additional count alleges that character of negligence. Its language is that " defendant negligently caused, suffered and permitted a certain other locomotive and train of cars to become and remain wrecked upon said track." While the words " operate " or " manage " are not used, still the words which are used may mean and include operation. The language is general and wanting in precision and might perhaps have been demurred to on that ground; yet under it, proof of negligence in the operation of appellant's trains was, we think, permissible. The third additional count charges negligent operation in a general way, and the fourth is simply a fuller and more

detailed statement of the cause of action declared on in the second in that it sets forth the specific facts and circumstances showing how appellant negligently caused the first train and locomotive to become wrecked.

*Second.* It is next contended that the court erred in not directing a verdict for appellant because (a) the employees on both trains, including appellee, were in law fellow-servants, and because (b) his injuries resulted from a risk which he had assumed.

*a.* Counsel do not in terms point out under which branch of the rule appellant is exempt from liability, and from their method of argument it is difficult, if not impossible, to determine upon which branch they rely. There is but little if any proof tending to show want of liability under the second branch, that " their (the servants) usual duties shall bring them into habitual consociation." The proof is practically confined to the running of the two trains on the day of the accident, and it does not appear whether the duties of appellee and the employees on the other train brought them together at other times. At the time of the injury appellee had been in appellant's service only one month. At any rate, so far as the second branch of the rule is concerned, the court would not have been justified in withdrawing the question from the jury and holding as matter of law that appellant is not liable; and we are inclined to think that counsel do not so claim.

The real contention then is that appellee and the other employees were directly co-operating with each other in the particular business in hand. Whether this contention be correct depends upon the meaning of the phrase " the particular business in hand " as applied to the circumstances of the case. If by such business is meant the operation of appellant's road, it would not be liable; whereas it would be if the particular business in hand means the operation of each train by and for itself.

O. & M. Ry. Co. v. Robb, 36 Ill. App. 627, cited by counsel, is not in point because the plaintiff and his co-employee were held to be fellow-servants under the second

branch of the rule. In Clark v. Wabash Ry. Co., 52 Ill. App. 104, next cited, it is apparent that the company was discharged from liability also under the second branch of the rule inasmuch as the court cite the Robb case, *supra*, as sole authority and the proof was directed to show " habitual consociation." The same is true of E. J. & C. Ry. Co. v. Malaney, 50 Ill. App. 114, and Klees v. C. & E. I. Ry. Co., 68 Ill. App. 244. In T. H. & I. Ry. Co. v. Leeper, 60 Ill. App. 194, plaintiff's intestate and the crew by whose negligence he lost his life were employed, not on different trains, but on different sections of the same train. I. C. Ry. Co. v. Swisher, 74 Ill. App. 164, is dissimilar in its facts. What was said on this subject in C. & E. I. Ry. Co. v. Rouse, 78 Ill. App. 286, was not necessary to the decision.

To hold in this case as a matter of law that appellee and the men working on the train ahead of him were fellow-servants, would be to hold that the operation of the numerous trains on appellant's road was the particular business in hand. This we are not prepared to do. C. C. Ry. Co. v. Leach, 80 Ill. App. 354, s. c., 104 Ill. App. 30; C. & A. Ry. Co. v. O'Brien, 155 Ill. 630; Hartley v. R. R. Co., 197 Ill. 440. In the O'Brien case the Supreme Court say : " To hold broadly that the servants working in the same department are fellow-servants would practically abolish the rule of this court as distinguished from that at common law and held by other courts." The decision in the Hartley case rests upon the same views. In the Leach case the plaintiff was a conductor in the employ of a street railway company, having in charge two cars, a grip-car and a trailer, and it became necessary for him to stop his train and get underneath between the cars to tighten a drawbar. While so engaged the train next following crashed into his, and inflicted upon him the injuries sued for. We regard the facts and attending circumstances in that case much stronger in favor of the master than in the case at bar; yet the Appellate Court has twice held that Leach and the negligent gripman of the train that ran into

him were not fellow-servants, and the Supreme Court in an opinion filed October 26, 1903, affirmed the last decision of the Appellate Court. It has since, however, granted a rehearing.

*b.* The contention that appellee was injured as the result of a risk assumed by him is so well answered by what was said by Ball, J., in the Leach case, *supra*, 104 Ill. App. 35, that we quote the passage: " An employee does not assume all the risks incident to his employment; but such as are ordinary and usual he does assume. 'Usual' is that which is common, frequent, customary; 'ordinary' is that which is often recurring. Can it be said that the dashing of one train into another upon a clear day on a straight track was an 'ordinary' or 'usual' danger which appellee assumed when he accepted employment with appellant? The jury have said it is not, and we agree with that finding." Hartley v. R. R. Co., *supra*.

*Third.* Complaint is made of the refusal to give appellant's second instruction which would have informed the jury that before appellant could be held on account of an unsafe track, it must have had actual or constructive knowledge thereof. The jury were so informed by given instruction No. 6. Moreover, under the law and the facts of the case there could be no recovery by reason of the track's condition. It was conceded that the track was safe and sound until the accident to the first train and there was no time to repair it during the few minutes that elapsed before the accident to the second train. Manifestly the jury took this view of the matter, for they found specially that the cause of the injury was the manner of operating the first train.

Instruction No. 5 was properly refused because it does not refer or limit the jury to the evidence and does not purport to be based thereon.

Under instruction No. 9 appellee could not recover if he was injured because "the engineer of the first or second engine of train 94 (the one appellee was on) failed to heed signals given by some of the crew of the train called 3-64"

(the train ahead of him).    This instruction was bad for two reasons.    By it the court is made to say that the failure to heed the signals constitutes negligence.    This was a question of fact for the jury.    But even if such negligence did exist, that is, negligence on the part of those engaged with appellee in operating the second train, such negligence would not be imputed to him and bar a recovery unless appellant and its servants were free from negligence in managing the first train.    Upon this point the instruction was silent.    C. & A. Ry. Co. v. Harrington, 192 Ill. 9.

Whether appellee and his fellow employees upon his own train were in the exercise of proper care was a question of fact for the jury, and we cannot say that their finding is against the evidence.    While there was proof tending to show a want of such care on the part of appellee's fellow-employees, he himself is not shown to have been in default; and appellant's witness testified that the engineers of both engines did everything in their power to stop the train; that it could not have been stopped in less distance; that it was "pretty near stopping" when it was derailed.    Besides, as has been pointed out, even if the engineers were negligent, that fact would not relieve appellant from liability if their and its joint negligence concurred in bringing about appellee's injuries.

Other errors are assigned but not argued and hence waived. 

The judgment of the Superior Court is affirmed.

*Affirmed.*