CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY V.
DAVID R. COLBY.

FILED JULY 3, 1903. No. 12,883.

1. **Common Carrier:** FREIGHT REGULATION. A railroad company, as a common carrier, may make reasonable rules and regulations for the reception, carriage and delivery of freights, including the classification and suitable preparation of articles for shipment; and such rules and regulations shippers are to conform to.

2. **Reasonableness, Question of Law.** The reasonableness of such rules, regulations and classification is a question of law for the court; and it is reversible error to submit that question to the jury.

ERROR to the district court for Gage county: CHARLES B. LETTON, DISTRICT JUDGE. *Reversed.*

*W. F. Evans, Alfred Hazlett* and *Fulton Jack,* for plaintiff in error.

*Leonard W. Colby, contra.*

BARNES, C.

In this action David R. Colby, the defendant in error, sought to recover the possession of a certain wagon described in his petition, from the Chicago, Rock Island & Pacific Railway Company. Such proceedings were had that the case finally reached the district court for Gage county; where, on a trial to a jury, a verdict was returned in his favor for the possession of the property, and for the sum of $13.80, damages. Judgment was rendered on the verdict, and the railway company prosecuted error.

It appears that one F. A. Matthis delivered a peddler's wagon to the Chicago & Great Western Railway Company, at Pearl City, Illinois, to be shipped to the defendant in error, at Beatrice, Nebraska; that it was transported by the initial carrier as far as its line of road· extended, and was there delivered to the plaintiff in error, and was carried by it to the place of destination; that

when the defendant called for the wagon a dispute arose over the freight charges. The amount claimed by the plaintiff was $13.80, while the defendant insisted that he should be required to pay the sum of $6.62, only. Efforts were made to adjust the matter in dispute, which were unsuccessful, and, thereupon, the defendant replevied the wagon, alleging that he had tendered the plaintiff an amount sufficient to pay the proper freight charges. The record discloses that he introduced some evidence tending to show that he had made an inquiry of some one in charge of the plaintiff's office in Beatrice, to ascertain the probable cost of transporting the wagon from Pearl City, Illinois, to that place, and had been told that it would be about $6.62; that thereupon he wrote to Matthis to ship it to him. It appears that when the wagon was delivered by Matthis to the Great Western Railway Company, it was not crated or prepared for shipment in the manner required by the company's rules, and, therefore, the charge for its transportation was greater than the rate contended for by the defendant. No rate was fixed by the contract of shipment, and when the plaintiff's freight inspector saw the wagon and ascertained its condition he fixed the rate thereon which is provided for by what is called the western classification, and which it appears applied to all roads west of the Mississippi river, the plaintiff included, and directed the agent of the road at Beatrice to collect that rate from the defendant. It also appears from the evidence that if the wagon had been crated according to the regulations set forth in the western classification of freights, which classification, together with the rates prescribed thereby, appears to have been posted in the depots of all said roads, the cost of the shipment would have been $6.62, but for lack of proper crating the rate was $13.80, the amount claimed by the plaintiff. There is no conflict of evidence on these questions. The plaintiff claimed the right to hold the property until its lien for the freight charges was paid, while the defendant demanded its delivery on the

payment of the lesser rate. This was the real question
in dispute, and on the trial the court submitted the ques-
tion of the reasonableness of the regulations, classifica-
tion and freight charges to the jury, by the following·in-
structions:

"2. You are instructed that every common carrier in
this state is entitled to a lien upon the property trans-
ported by it for the proper and reasonable freight charges
thereupon, and that, unless you believe from the evidence
that the plaintiff has tendered to the defendant the rea-
sonable and proper freight charges for the shipment of
said goods, the defendant will be entitled to a verdict at
your hands. If, on the other hand, you find that the
amount which was tendered to the defendant is the rea-
sonable, proper and usual freight charges under the rules
and regulations which have been introduced in evidence
before you, adopted by various railway companies adopt-
ing such classifications, and that such regulations are
fair and reasonable, then you should find for the plaintiff.

"3. You are instructed that it is competent for com-
panies engaged in the business of common carriers to
adopt rules of classification and tariffs of freight charges
for the carriage of goods, and that if said classifications
and tariffs are fair and reasonable, they are lawful and
proper and must be recognized by persons transacting
business with such common carriers.

"And in this case if you believe from the evidence that
such regulations are fair and reasonable and that the
goods in controversy were, by the terms and conditions
of the western classification which has been introduced
in evidence, entitled to be shipped at one and one-half
times the first class rate, at actual weights, then you
should find for the plaintiff. But if, on the other hand,
you find that the goods in controversy were under the
rules of the western classification entitled to be rated as
first class, minimum weight fifteen hundred pounds, then
you should find for the defendant."

That a common carrier has a lien for its proper freight

charges on property transported over its lines of road and may hold possession of such property until its lien is paid, is the settled law of this state. It is equally well settled that on tendering the amount of freight charges actually due the carrier, the owner may replevy his goods, and it is unnecessary to again refer to these questions.

The plaintiff's first contention is, that the court erred in giving the instructions above quoted. A common carrier may make reasonable rules as to the reception, carriage and delivery of freights; such rules and regulations shippers are to conform to. Their reasonableness is a question of law for the court to decide. Rorer, Railroads, 227; *Illinois Central R. Co. v. Whittemore*, 43 Ill. 420; *Vedder v. Fellows*, 20 N. Y. 126; *Tracey v. New York & Harlem R. Co.*, 9 Bosw. (N. Y.) 396. In *Illinois Central R. Co. v. Whittemore, supra*, the court said:

"The circuit court left it to the jury to say whether the rule was reasonable. This was error. It was proper to admit testimony, as was done, but, either with or without this testimony, it was for the court to say whether the regulation was reasonable, and, therefore, obligatory upon the passengers. The necessity of holding this to be a question of law, and, therefore, within the province of the court to settle, is apparent from the consideration, that it is only by so holding, that fixed and permanent regulations can be established. If this question is to be left to juries, one rule would be applied by them today and another tomorrow. In one trial a railway company would be held liable, and in another, presenting the same question, not liable. Neither the companies nor passengers would know their rights or their obligations. A fixed system for the control of the vast interests connected with railways would be impossible, while such a system is essential equally to the roads and to the public."

In the case at bar, there was no conflict of evidence on the question as to what the regulations were which had been fixed by the western classification as to the manner of preparing the wagon in question for shipment. Neither

was there any dispute as to the rate fixed for its transportation, when prepared for shipment according to said rules and regulations. Therefore, it was the duty of the court to determine, as a matter of law, whether the regulations contained in the classification, which was introduced in evidence, were reasonable or not; and whether the sum charged for transportation thereunder was the proper amount. If these questions are left to the determination of juries, freight rates will soon reach a condition of chaos. What one jury might think was reasonable and just another jury might reject. And so it would soon be impossible for common carriers to conduct their business with any degree of fairness or uniformity towards their customers.

Again, it is well known and understood that railroad companies act only through their agents; that it is necessary for them to adopt rules and regulations for the guidance of such agents, and it is generally understood that persons dealing with such corporations are to be governed by these rules and regulations, if fair and reasonable. It, therefore, becomes necessary for the courts, as a matter of law, to determine the question of the reasonableness thereof in case of a disagreement between the railroads and their customers, because such rules are a part of the contract.

For these reasons, we hold that the court erred in giving the instructions complained of.

We deem it unnecessary to consider any of the other assignments of error. For the giving of the instructions above quoted, we recommend that the judgment of the district court be reversed and the cause remanded for a new trial.

ALBERT and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.